David Halberstadter (SBN 107033)
david.halberstadter@katten.com
Joanna M. Hill (SBN 301515)
joanna.hill@katten.com
Shelby A. Palmer (SBN 329450)
shelby.palmer@katten.com
KATTEN MUCHIN ROSENMAN LLP
2029 Century Park East, Suite 2600
Los Angeles, CA  90067-3012
Telephone:   310.788.4400
Facsimile:   310.788.4471

Attorneys for Defendant
ViacomCBS Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| CANDESHA WASHINGTON, | ) Case No. 2:20-cv-00435 |
| Plaintiff | ) **DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6)** |
| v. | ) |
| VIACOMCBS, INC.; AND DOES 1 THROUGH 50, | ) [Hon. Consuelo B. Marshall] |
| Defendants. | ) *[Defendant's Request for Judicial Notice; Declaration of Joanna M. Hill; Notice of Lodging; and [Proposed] Order filed concurrently herewith]* |
| | ) Date:  May 5, 2020 |
| | ) Time: 10:00 A.M. |
| | ) Place:  Room 8B |

Katten
KattenMuchinRosenmanLLP
515 South Flower Street, Suite 1000
Los Angeles, CA 90071-2212
213.788.0443 tel   213.788.7369 fax

**TO PLAINTIFF AND HER ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on May 5, 2020, at 10:00 a.m., or as soon thereafter as the parties may be heard, before the Honorable Consuelo B. Marshall, United States District Judge, in Courtroom 8B, located at 350 W. First Street, Los Angeles, California 90012, defendant ViacomCBS Inc. ("Defendant") will and hereby does move to dismiss the Complaint ("Complaint") filed by plaintiff Candesha Washington ("Plaintiff") pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

Defendant moves to dismiss on the grounds that Plaintiff has failed to state any claim upon which relief can be granted.  More specifically, judgment should be entered in Defendant's favor on Plaintiff's First Cause of Action for copyright infringement, which is based on an allegedly infringing episode of the television series *Bull*, because (i) Plaintiff has failed to sufficiently allege that _any_ of the creators or writers of the *Bull* episode had access to Plaintiff's work, and (ii) there is no substantial similarity between Plaintiff's work and the *Bull* episode as a matter of law.

Judgment should be entered in Defendant's favor on Plaintiff's Second Cause of Action for copyright infringement, which is based on a proposed[1] television series based on the 1995 film *Clueless*, because (i) given the alleged status of this proposed television series, Plaintiff's claim is not ripe[2], and (ii) even if the claim were ripe, Plaintiff has failed to sufficiently allege that _any_ of the creators or writers of the proposed *Clueless* series had access to Plaintiff's work, and (iii) there is no substantial similarity between Plaintiff's work and the proposed *Clueless* series as a matter of law.

Plaintiff's Third Cause of Action, for violations of the California Business and Professions Code, sections 17200 *et seq.*, fails as a matter of law because this claim is

---

[1]    The Complaint does not and cannot allege that the proposed television series has even progressed from the development stage to production.

[2]    Defendant moves to dismiss this claim based upon ripeness grounds pursuant to Federal Rule of Civil Procedure 12(b)(1) because ripeness is a question of subject matter jurisdiction. *See S. Pac. Transp. Co. v. City of Los Angeles*, 922 F.2d 498, 502 (9th Cir. 1990).

premised on the same allegations of copyright infringement that underlie Plaintiff's First and Second Causes of Action, and is therefore preempted by the Copyright Act. Lastly, Plaintiff's Fourth Cause of Action for declaratory relief is also premised on the same copyright infringement allegations that underlie Plaintiff's First and Second Causes of Action, and fails for the same reasons that those causes of action fail to state a claim.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on February 14, 2020.

This Motion is based upon this Notice of Motion and the attached Memorandum of Points and Authorities; the pleadings and papers on file in this action; Defendant's Request for Judicial Notice filed concurrently herewith and any other matters of which the Court may take judicial notice; the Declaration of Joanna M. Hill; the works lodged by Defendant concurrently herewith; and such other argument that may be presented to this Court at or before the hearing on this Motion.

Respectfully submitted,

Dated:  March 13, 2020                    KATTEN MUCHIN ROSENMAN LLP


By: /s/ *Joanna M. Hill*
Joanna M. Hill
Attorneys for Defendant
ViacomCBS Inc.

## TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................1

II.   FACTUAL BACKGROUND ...............................................................2

    A.   Allegations Of The Complaint .......................................................2

    B.   Purported Similarities.....................................................................3

    C.   Summary Of The Treatment ...........................................................3

    D.   Summary Of The Pilot ....................................................................5

    E.   Summary Of The *Bull* Episode ......................................................6

III.  STANDARDS FOR A MOTION TO DISMISS ...................................8

IV.   PLAINTIFF FAILS TO STATE A VIABLE CLAIM FOR COPYRIGHT INFRINGEMENT. ...............................................................................8

    A.   Plaintiff Fails To Allege Plausible Facts That Defendant Had Access To The Treatment Or The Pilot....................................................9

        1.   Access Standards ...............................................................9

        2.   Plaintiff Has Failed To Allege That Defendant Had Access To The Pilot, And Her Allegations Of Defendant's Purported Access To The Treatment Are Pure Speculation............................11

    B.   There Is No Substantial Similarity Between The Treatment And Either The *Bull* Episode or The Proposed *Clueless* Series. ........................12

        1.   Substantial Similarity Standards.........................................12

            a.   The Ninth Circuit's Extrinsic Test For Substantial Similarity Only Requires An Analysis Of The Protected Elements Of The Treatment. ..............................12

            b.   Copyright Law Does Not Protect Generalized Themes, Ideas Or Stock Elements........................13

        2.   The Treatment And The *Bull* Episode Are Not Substantially Similar In Protected Expression. .............................................14

            a.   The Plot Of The *Bull* Episode Bears No Similarity To The Plot Of The Treatment. ............................14

            b.   The Characters In The Treatment Are Not Substantially Similar To Those In The *Bull* Episode.............16

               i. Protagonists .......................................................16

               ii. Secondary Characters.......................................18

Katten
KattenMuchinRosenman LLP
515 South Flower Street, Suite 1090
Los Angeles, CA 90071-2212
213.788.7400 tel    213.788.7360 fax

i

          c.     There Is No Substantial Similarity In Theme, Dialogue, Mood, Setting Or Pace Between The Treatment And The *Bull* Episode. ........................................... 19

    3.     The Treatment And The Proposed *Clueless* Series (As Alleged) Are Not Substantially Similar In Protected Expression. .................. 20

   C.    Plaintiff's Claim Premised On The Proposed *Clueless* Series Is Not Ripe For Adjudication, In Any Event. ......................................... 21

V.     PLAINTIFF'S CLAIM FOR DECLARATORY RELIEF ALSO FAILS ............ 23

VI.    PLAINTIFF'S CLAIM FOR VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTIONS 17200 *ET SEQ.* IS PREEMPTED BY THE COPYRIGHT ACT. .................................................................. 23

VII.   LEAVE TO AMEND SHOULD BE DENIED ....................................................23

VIII.  CONCLUSION ....................................................................................................24

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alexander v. Murdoch*,
   No. 10–5613, 2011 WL 2802899 (S.D.N.Y. May 27, 2011) ........................... 16

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ......................................................................................... 8

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ......................................................................................... 8

*Benay v. Warner Bros. Entm't, Inc.*,
   607 F.3d 620 (9th Cir. 2010) .............................................................. 13, 16, 19

*Berkic v. Crichton*,
   761 F.2d 1289 (9th Cir. 1985) ................................................................... 12, 13

*Bernal v. Paradigm Talent & Literary Agency*,
   788 F. Supp. 2d 1043 (C.D. Cal. 2010) ......................................................... 10

*Campbell v. Walt Disney Co.*,
   718 F. Supp. 2d 1108 (N.D. Cal. 2010) ......................................... 8, 12, 13, 16

*Cavalier v. Random House, Inc.*,
   297 F.3d 815 (9th Cir. 2002) .............................................................. 9, 12, 16

*Chavez v. U.S.*,
   683 F.3d 1102 (9th Cir. 2012) ......................................................................... 8

*Cory Van Rijn, Inc. v. Cal. Raisin Advisory Bd.*,
   697 F. Supp. 1136 (E.D. Cal. 1987) ............................................................... 12

*Counts v. Meriwether*,
   No. 14-00396, 2015 WL 9594469 (C.D. Cal. Dec. 30, 2015) ...................... 16

*Feist Publ'ns, Inc. v. Rural Tel. Servs. Co.*,
   499 U.S. 340 (1991) ......................................................................................... 8

*Funky Films, Inc. v. Time Warner Entm't Co., L.P.*,
   462 F.3d 1072 (9th Cir. 2006) .......................................................... 8, 9, 12, 13

*Gable v. Nat'l Broad. Co.*,
　　727 F. Supp. 2d 815 (C.D. Cal. 2010), *aff'd sub nom. Gable v. Nat'l Broad. Co.*, 438 F. App'x 587 (9th Cir. 2011) ............................................*passim*

*Gilbert v. New Line Prods., Inc.*,
　　No. 09-02231, 2009 WL 7422458 (C.D. Cal. Nov. 16, 2009), *aff'd*, 490 F. App'x 34 (9th Cir. 2012) ................................................................23

*Griffin v. Peele*,
　　No. 17-01153, 2017 WL 8231241 (C.D. Cal. Oct. 18, 2017) ...........................10

*Kelly v. University Press of Miss.*,
　　No. 16-2960, 2016 WL 4445986 (C.D. Cal. Aug. 16, 2016).......................21, 22

*Kodadek v. MTV Networks, Inc.*,
　　152 F.3d 1209 (9th Cir. 1998) ....................................................................23

*Kouf v. Walt Disney Pictures & Television*,
　　16 F.3d 1042 (9th Cir. 1994) ....................................................12, 13, 15

*Loomis v. Cornish*,
　　No. 12-5525, 2013 WL 6044349 (C.D. Cal. Nov. 13, 2013), *aff'd* 836 F.3d 991 (9th Cir. 2016) ........................................................................10

*Maloney v. T3Media, Inc.*,
　　853 F.3d 1004 (9th Cir. 2017) ....................................................................23

*Marcus v. ABC Signature Studios, Inc.*,
　　279 F. Supp. 3d 1056 (C.D. Cal. 2017) ..................................................17, 23

*Meta-Film Assocs., Inc. v. MCA, Inc.*,
　　586 F. Supp. 1346 (C.D. Cal. 1984) ..........................................................9, 11

*Metcalf v. Bochco*,
　　294 F.3d 1069 (9th Cir. 2002) ....................................................................13

*Musero, III v. Mosaic Media Grp. Inc.*,
　　No. 10-1748, 2010 WL 11595453 (C.D. Cal. Aug. 9, 2010)........................8, 12

*Newt v. Twentieth Century Fox Film Corp.*,
　　No. 15-02778, 2016 WL 4059691 (C.D. Cal. July 27, 2016) ...........8, 12, 16, 20

*Olson v. Nat'l Broad. Co.*,
　　855 F.2d 1446 (9th Cir. 1988) ..............................................................13, 15

Katten
KattenMuchinRosenmanLLP
515 South Flower Street, Suite 1000
Los Angeles, CA 90071-2212
213.788.7440 tel   213.788.7360 fax

*Panton v. Strong*,
   No. 17-00050, 2018 WL 5099666 (C.D. Cal. Mar. 14, 2018) ..........................10

*Rice v. Fox Broad. Co.*,
   330 F.3d 1170 (9th Cir. 2003) ...........................................................12, 13, 15, 21

*Royal Palm Filmworks, Inc. v. Fifty-Six Hope Rd. Music, Ltd.*,
   No. 17-2336, 2017 WL 4685550 (C.D. Cal. Aug. 17, 2017), *aff'd*, 747
   F. App'x 624 (9th Cir. 2019) ...........................................................................21, 22

*S. Pac. Transp. Co. v. City of Los Angeles*,
   922 F.2d 498 (9th Cir. 1990) ............................................................................21, 23

*Schkeiban v. Cameron*,
   No. 12-0636, 2012 WL 12895722 (C.D. Cal. May 10, 2012) ............................9

*Schkeiban v. Cameron*,
   No. 12-0636, 2012 WL 5636281 (C.D. Cal. Oct. 4, 2012) *aff'd* 566 F.
   App'x 616 (9th Cir. 2014) ..................................................................................23

*Scott v. Meyer*,
   No. 09-6076, 2009 WL 10673163 (C.D. Cal. Dec. 2, 2009) ........................8, 12

*Scwarz v. United States*,
   234 F.3d 428 (9th Cir. 2000) ..............................................................................12

*Shame on You Prods., Inc. v. Elizabeth Banks*,
   120 F. Supp. 3d 1123 (C.D. Cal. 2015) *aff'd sub nom. Shame on You
   Prods., Inc. v. Banks*, No. 15-56372, 2017 WL 1732279 (9th Cir. May
   3, 2017) .................................................................................................................16

*Shaw v. Lindheim*,
   919 F.2d 1353 (9th Cir. 1990) ............................................................................16

*Sid & Marty Krofft Telev. Prods., Inc. v. McDonald's Corp.*,
   562 F.2d 1157 (9th Cir. 1977) ............................................................................11

*Silas v. Home Box Office*,
   201 F. Supp. 3d 1158 (C.D. Cal. 2016) .........................................................16, 17

*Thomas v. Walt Disney Co.*,
   337 F. App'x 694 (9th Cir. 2009) ........................................................................3

*Three Boys Music Corp. v. Bolton*,
   212 F.3d 477 (9th Cir. 2000) ..............................................................................9

Katten
KattenMuchinRosenmanLLP
515 South Flower Street, Suite 1000
Los Angeles, CA 90071-2212
213.788.2445 tel   213.788.7380 fax

*Walker v. Time Life Films, Inc.*,
  784 F.2d 44 (2d Cir. 1986) .................................................................................14

*Warner Bros. Pictures, Inc. v. Columbia Broad. Sys., Inc.*,
  216 F.2d 945 (9th Cir. 1954) ..............................................................................16

*Weiss v. DreamWorks SKG*,
  No. 14-02890, 2015 WL 12711658 (C.D. Cal. Feb. 9, 2015) ...........................9

*Wild v. NBC Universal, Inc.*,
  788 F. Supp. 2d 1083 (C.D. Cal. 2011), *aff'd sub nom. Wild v. NBC
  Universal*, 513 F. App'x 640 (9th Cir. 2013) ....................................................8

*Zella v. E.W. Scripps Co.*,
  529 F. Supp. 2d 1124 (C.D. Cal. 2007) .......................................................11, 12

**Statutes**

17 U.S.C. § 505 ...........................................................................................................2

Cal. Bus. and Prof. Code §§ 17200 *et seq.* ........................................................2, 23

17 U.S.C. §§ 101 *et seq.* ........................................................................................2, 23

**Rules**

Fed. R. Civ. P. 12(b)(1) ............................................................................................21

**Katten**
KattenMuchinRosenmanLLP
515 South Flower Street, Suite 1000
Los Angeles, CA 90071-2212
213.788.0443 tel   213.788.7360 fax

Katten
Katten Muchin Rosenman LLP

515 South Flower Street, Suite 1000
Los Angeles, CA 90071-2212
213.788.7272 tel   213.788.7300 fax

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiff Candesha Washington ("Plaintiff") alleges that defendant ViacomCBS Inc. ("Defendant") infringed upon her registered work, a pilot script for a proposed television series titled #SquadGoals (the "Pilot") and a "treatment" of the Pilot (the "Treatment").

[1] Plaintiff alleges that Defendant copied the Treatment via an episode of the television series *Bull* (the "*Bull* Episode").  Then, Plaintiff separately alleges that Defendant also copied different parts of the same Treatment to make a completely different series – a proposed, yet-to-be produced television series based on the 1995 film *Clueless* (the "Proposed *Clueless* Series"), the copyright to which Defendant owns.

Neither claim has any merit.  First, Plaintiff does not allege that Defendant ever had access to the Pilot.  Rather, Plaintiff alleges that she provided only the Treatment to an unaffiliated third party called Imagine Impact, LLC ("Imagine Impact"), and speculates that because Imagine Impact supposedly had a so-called "first look deal" with Defendant's predecessor company, it must have shared the Treatment with Defendant.  Imagine Impact is not alleged to have any involvement with the creation, development or production of the *Bull* Episode or the creation and development of the Proposed *Clueless* Series.

Second, there is no substantial similarity between the Treatment and the *Bull* Episode.[2]  The two works have entirely different plots and characters.  That both works involve an African-American female protagonist named Sadie provides no legal foundation for an infringement claim; and any other purported similarities between the

---

[1]   The Treatment is not actually a summary or outline of the Pilot, as most treatments are.  It is a completed application form that Plaintiff allegedly submitted to third party Imagine Impact.  Compl. ¶ 31; Declaration of Joanna M. Hill ("Hill Decl."), Exhibit ("Ex.") A at 56-65.

[2]   For purposes of the substantial similarity analysis, the only appropriate comparison is between the Treatment – not the Pilot – and the *Bull* Episode because Plaintiff has only alleged that Defendant had access to the Treatment and not the Pilot.

works are inaccurate, misleading or generic, and therefore not entitled to copyright protection.

Third, Plaintiff's claim based on the Proposed *Clueless* Series is grossly premature because the series *does not yet exist*.[3]  Plaintiff's claim is based solely upon media reports that such a proposed television series is being developed, and a one-sentence description of the contemplated series.  Even *assuming arguendo* Plaintiff's claim were ripe, no substantial similarity exists between the works because the only similarities alleged by Plaintiff – a plot centered on the disappearance of the so-called "queen bee" in a group of friends – is utterly banal.

Fourth, Plaintiff's California state law claims also fail.  Plaintiff's claim for declaratory relief is duplicative of her copyright infringement claims, and fails for the same reasons.  Plaintiff's claim for unfair competition under California Business and Professions Code sections 17200 *et seq.* is premised on Plaintiff's allegations of copyright infringement and is therefore preempted by the Copyright Act.

Accordingly, Defendant respectfully requests that the Court:  (1) dismiss with prejudice Plaintiff's First Cause of Action (copyright infringement arising from the *Bull* Episode), Third Cause of Action (violation of Bus. & Prof. Code §17200 *et seq.*), and Fourth Cause of Action (declaratory relief); (2) dismiss Plaintiff's Second Cause of Action (copyright infringement arising from the Proposed *Clueless* Series) without prejudice to Plaintiff's entitlement to refile that claim if it ever becomes ripe; and (3) award Defendant its attorneys' fees and costs pursuant to 17 U.S.C. section 505.

## II.   FACTUAL BACKGROUND

### A.   Allegations Of The Complaint

As mentioned above, Plaintiff asserts four causes of action against Defendant: (1) copyright infringement based on the *Bull* Episode; (2) copyright infringement based on

---

[3]      It is unusual, to say the least, for a plaintiff to claim that two completely different works by a defendant infringed the plaintiff's work in two completely different ways. It is as if Plaintiff recognizes that neither of Defendant's works, by itself, is sufficiently similar to her work to constitute copyright infringement, so she has made two claims in the hope that the Court will assume that something nefarious must be going on.

Katten
Katten Muchin Rosenman LLP

515 South Flower Street, Suite 1000
Los Angeles, CA 90071-2212
213.788.0143 tel   213.788.7360 fax

the Proposed *Clueless* Series; (3) unfair competition; and (4) declaratory relief. Plaintiff claims that on some unspecified date, she submitted <u>*the Treatment*</u> to Imagine Impact.   *Id.* at ¶ 31.   Plaintiff alleges, on information and belief, that Defendant obtained access to the Treatment because Defendant's predecessor, CBS Corporation ("CBS"), supposedly had a "first look deal" with Imagine Impact.  *Id.* at ¶ 31.  Plaintiff does not allege that Defendant (or Imagine Impact) ever obtained access to <u>*the Pilot*</u> itself, so the Court need not consider the Pilot as a basis for Plaintiff's claims.

### B.   <u>Purported Similarities</u>

Plaintiff alleges that the *Bull* Episode is substantially similar to her copyrighted works because both protagonists: (1) have similar names; (2) are African-American female "social media influencers;" (3) supposedly have "a history of mental illness;" and (4) are allegedly manipulated and controlled by someone close to them, in order to use them as bait to secure a lucrative business deal.  *Id.* at ¶¶ 20, 22.

Plaintiff alleges that the Proposed *Clueless* Series is substantially similar to her works because they both center on (i) the disappearance of a "queen bee" who is later replaced by her African-American best friend/sidekick and (ii) the ensuing investigation into the queen bee's disappearance.  *Id.* at ¶¶ 29-30.

### C.   <u>Summary Of The Treatment</u>[4]

Plaintiff does not allege that Defendant had access to the Pilot, so only the Treatment is at issue.  The Treatment focuses on the protagonist (Sadie Williamson), the person she was before she became a celebrity social media influencer and moved to Los Angeles and her struggles to adapt to life in the limelight.[5]  The Treatment

---

[4]    The Motion's summaries of the Pilot and the Treatment are derived from the Copyright Office's certified Copy of Deposit of these two documents, which are also attached to the Hill Decl. as Ex. A.  Defendant concurrently has requested that the Court take judicial notice of these works.  *Thomas v. Walt Disney Co.*, 337 F. App'x 694, 695 (9th Cir. 2009) (district court properly considered materials alleged in complaint in finding no substantial similarity).

[5]    Almost half of the Treatment contains non-copyrightable material, including Plaintiff (i) explaining who she is and her writing experience, (ii) identifying what other television shows her work is most like, (iii) identifying the key demographic/audience for her work, (iv) listing which networks she would like her work released on, and (v) offering her thoughts on directors, casting and budgets.  Hill Decl., Ex. A at 56-65.

describes Sadie as a naïve girl from upstate New York who suffers from anxiety and low self-esteem, and who ultimately comes to Los Angeles with dreams of being a celebrity influencer. Sadie's new "friend," Roxy, is the nastiest influencer of them all, and circumstances quickly devolve when she disappears.

Before coming to Los Angeles, Sadie moved to Manhattan to work for a fashion magazine while simultaneously writing for her own fashion blog. Evvy (a high-powered publicist) recruits Sadie to move to Los Angeles to become a social media influencer. Once in Los Angeles, Sadie succumbs to the pressures of being an "It Girl" by losing weight, changing the way she dresses and getting plastic surgery.

Plaintiff describes the plot as "center[ing] around a murder mystery and discovering who commited [sic] the murder, when they did it, how they did it, why they did it, and what is the consequence of them doing it." Hill Decl., Ex. A at 61. The essential plot question is whether "Sadie [will] be able to evolve into the confident, strong woman that she was born to be without losing her sense of self in a world that's constantly telling her that who she is at her core, is fundamentally not enough[.] Sadie must come to terms with finding worthiness through her intrinsic value and knowing that she is deserving of love and success without selling out, but she must first learn to love herself."[6]  *Id*. at Ex. A at 58.

Evvy is the antagonist—a 40-something, cutthroat publicist.  Unlike the Pilot, the Treatment adds that Evvy is working on an exposé about how easy it is to exploit social media influencers to get them to do what you want, and that Sadie is her "guinea pig" test subject.  Evvy is a victim of sexual assault and struggles with her experience.  She also chose her career over being a mother to her daughter.   The Treatment notes that at the end of the Pilot, Evvy's daughter is found dead.  Finally, the Treatment states that the proposed series will include Sadie being betrayed by her best friend, her publicist, her crush and Roxy, and simultaneously cover LGBTQ, mental health and #metoo

---

[6]    As the next section will show, this description of Sadie is fundamentally at odds with how she is actually depicted in the Pilot.

Katten

Katten Muchin Rosenman LLP

525 South Flower Street, Suite 1000
Los Angeles, CA 90071-2212
213.788.0443 tel   213.788.7760 fax

1  movement issues.  The Treatment claims that "[t]he true essence of the series is about

2  shame and guilt caused by secrecy."  *Id*. at Ex. A at 63.

3      **D.**      **Summary Of The Pilot**[7]

4      The 55-page Pilot delves more deeply into the central plot described in the

5  Treatment.  Like the Treatment, the Pilot centers on the suspicious disappearance of a

6  popular social media influencer, Roxy, and the subsequent police investigation into

7  Roxy's "squad," as they were the last people to see her alive.

8      The first scene takes place at the opening night of a Los Angeles nightclub that is

9  swarming with onlookers and paparazzi.  A black SUV drives up carrying popular

10  Instagram influencer Sadie Williamson (a bi-racial African-American female in her

11  20s) and her "squad" of three other social media influencers/girlfriends.[8]  When one of

12  the squad, Jana, asks to walk the red carpet in front of Sadie, Sadie responds by secretly

13  spiking Jana's shot of alcohol with a quick-acting laxative.  After Jana exits the SUV

14  and begins to walk down the red carpet, she collapses on the ground writhing in pain

15  and defecates all over herself.  Throughout the Pilot, Sadie is portrayed as manipulative

16  and selfish, if not a borderline sociopath.

17      Upon entering the nightclub, Sadie and her squad sit with Sadie's boyfriend,

18  Miles[9], and his friends.  Shortly thereafter, two detectives show up and ask Sadie, her

19  squad, Miles and his friends to come with them to the police station to answer some

20  questions about the disappearance of Roxy.  The Pilot occasionally flashes back to

21  earlier in Sadie's life when she was an eager, sweet and quiet assistant to an editor at a

22  New York fashion magazine.  During the flashback, there is a one-line reference to

23  Sadie having taken anti-anxiety pills, but it is unclear why she took them in her past or

24  whether she currently takes any such medications. The Pilot suggests that Sadie was

25  _____

26  [7]    Although Plaintiff does not claim that Defendant had access to the Pilot, Defendant includes a summary of the Pilot in this Motion to demonstrate that Plaintiff's claims would fail even if the Pilot were considered.

27  [8]    Sadie and her squad were actually Roxy's squad prior to Roxy's disappearance.

28  [9]    Miles had been Roxy's boyfriend, but began dating Sadie after Roxy's disappearance.

Katten

KattenMuchinRosenmanLLP
515 South Flower Street, Suite 1000
Los Angeles, CA 90071-2212
213.788.0433 tel    213.788.7760 fax

1  recruited to come to Los Angeles by Evvy who was looking for the "next big social
2  media star" to promote.

3       When the Pilot flashes back to Roxy's life prior to her disappearance, it is
4  revealed that Roxy was being manipulated and controlled by Evvy, who was also
5  Roxy's publicist.  Evvy is a no-nonsense professional who is concerned only with
6  increasing the popularity of her clients, even if at the expense of their well-being.  After
7  Roxy disappears, Evvy essentially transfers all of Roxy's endorsement deals to Sadie.

8       Sadie, Miles and the rest of their respective squads were the last people to see
9  Roxy.  The detectives separately question each of them, and later bring in Evvy for
10 questioning.  At the end of Evvy's interview (which occurs at the end of the Pilot), the
11 police tell Evvy that they found her car crashed near Runyon Canyon with her assistant,
12 Kaitlyn, dead inside the trunk.  Evvy is devastated and tells the police that Kaitlyn was
13 not just her assistant, but also her daughter.

14       **E.    Summary Of The *Bull* Episode**[10]

15       The *Bull* series focuses on the activities and exploits of the fictional Dr. Jason
16 Bull, the founder of one of the most notable trial consulting firms in New York.  Dr.
17 Bull's trial consulting team is comprised of various experts, including a trial defense
18 attorney, a computer hacker and a fashion consultant.  Dr. Bull and his team provide
19 insight and advice to clients facing legal conflicts.[11]  With respect to the *Bull* Episode,
20 Dr. Bull's fashion consultant, who is familiar with the protagonist, Sadie Williams, and
21 her company, brings Sadie's situation to Dr. Bull's attention.

22       Sadie Williams (an African-American female in her early 30s) has a makeup line
23 called *Define Yourself by Sadie* ("Define Yourself").  Sadie started her business when
24 she was only 16 years old, when she began doing makeup videos online after

25  ───────────────

26 [10]    A copy of the *Bull* Episode is identified in the Hill Decl. as Ex. B and has been
separately lodged. Defendant has requested that the Court take judicial notice of the
27 contents of this episode.  *See* Request for Judicial Notice.

[11]    Each episode features most of the same recurring characters as well as new one-
28 off characters who play limited roles for limited plots.  Sadie is not a recurring
character and the *Bull* Episode is a one-episode story arc.

Katten

Katten Muchin Rosenman LLP

515 South Flower Street, Suite 1000
Los Angeles, CA 90071-2212
213.788.7443 tel   213.788.7360 fax

perceiving a need for makeup advice and tips for women of color.  The plot of the episode centers on Sadie's desire to regain control over her company, which her father—who was appointed Sadie's legal conservator for all purposes—wants to sell for a multi-million dollar price.

The episode begins with another company presenting its offer to buy Define Yourself and expand it into the international market.  Sadie's father wants to sell the company, ostensibly in order to make Sadie financially secure for the rest of her life. The acquiring company proposes to have a different "Sadie" spokesperson in each country because it believes a brand representative who looks like the demographic of each country will more effectively sell the products.  But Sadie wants to personally serve as brand ambassador for her company in every market and does not want to sell it under these conditions.  Sadie and her father are in direct conflict, but her father, as her conservator, gets to make this business decision, even if it is against Sadie's wishes.

Three years prior, when Sadie's popularity and brand were skyrocketing, Sadie had a public "meltdown."  It was captured on camera and leaked online. In the midst of filming, Sadie began yelling, throwing things, screaming and kicking everyone around her.  Once hospitalized, Sadie was diagnosed with bipolar disorder.  During her hospitalization and early recovery, Sadie stopped working; her father petitioned the court and was appointed as conservator over all of Sadie's affairs.

Now several years later, with the sale of her company at stake, Sadie seeks out Dr. Jason Bull to help her end the conservatorship and stop the sale of her company. Sadie tells Dr. Bull and his team that she has been stable for almost two years, is taking medication and is in therapy.  The remainder of the episode focuses on the legal proceedings to end the conservatorship, Sadie's relationship with her father and the tension between Dr. Bull and Sadie's father, who appear to have different objectives.

By the conclusion of the episode, it is clear that Sadie's father is only interested in selling Sadie's company in order to protect her and to secure her financial future.

7

1  The two reconcile and settle their dispute:  Sadie agrees to the sale of the company and
2  her father agrees to end the conservatorship.

3  ### III.   STANDARDS FOR A MOTION TO DISMISS

4      A motion to dismiss must be granted unless the plaintiff alleges "more than the
5  mere possibility of misconduct;" otherwise, "the complaint has alleged—but it has not
6  'shown'—that the pleader is entitled to relief."  *Wild v. NBC Universal, Inc.*, 788 F.
7  Supp. 2d 1083, 1097 (C.D. Cal. 2011), *aff'd sub nom. Wild v. NBC Universal*, 513 F.
8  App'x 640 (9th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)); *Bell*
9  *Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) ("Factual allegations must be enough
10  to raise a right to relief above the speculative level.").  Although a plaintiff's allegations
11  are generally taken as true, "labels and conclusions" are insufficient to defeat a motion
12  to dismiss. *Newt v. Twentieth Century Fox Film Corp.*, No. 15-02778, 2016 WL
13  4059691, at *1 (C.D. Cal. July 27, 2016); *Chavez v. U.S.*, 683 F.3d 1102, 1108 (9th Cir.
14  2012) ("Mere conclusory statements in a complaint and 'formulaic recitations of the
15  elements of a cause of action' are not sufficient.").

16      "[W]hen the copyrighted work and the alleged infringement are both before the
17  court, capable of examination and comparison, non-infringement can be determined on
18  a motion to dismiss." *Campbell v. Walt Disney Co.*, 718 F. Supp. 2d 1108, 1111 (N.D.
19  Cal. 2010).[12]

20  ### IV.   PLAINTIFF FAILS TO STATE A VIABLE CLAIM FOR COPYRIGHT
21  ### INFRINGEMENT.

22      To prevail on a claim for copyright infringement, a plaintiff must show (i)
23  ownership of a valid copyright and (ii) that the defendant copied original elements of
24  that work.  *Feist Publ'ns, Inc. v. Rural Tel. Servs. Co.*, 499 U.S. 340, 361 (1991); *see*
25  *also Funky Films, Inc. v. Time Warner Entm't Co., L.P.*, 462 F.3d 1072, 1076 (9th Cir.

26  ---
27  [12]    *See also Musero, III v. Mosaic Media Grp. Inc.*, No. 10-1748, 2010 WL
11595453, at *2-6 (C.D. Cal. Aug. 9, 2010) (dismissing complaint and comparing
plaintiff's screenplay with the movie *Bruno*); *Scott v. Meyer*, No. 09-6076, 2009 WL
28  10673163, at *2-6 (C.D. Cal. Dec. 2, 2009) (dismissing complaint and comparing
plaintiff's novel with *Twilight* saga novel).

Katten
Katten Muchin Rosenman LLP
515 South Flower Street, Suite 1000
Los Angeles, CA 90071-2212
213.788.0443 tel   213.788.7360 fax

2006).  The second prong of this analysis requires that the plaintiff establish that "the infringer had access to [his or her] copyrighted work and that the works at issue are substantially similar in their protected elements." *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002); *see also Funky Films*, 462 F.3d at 1076.

## A. <u>**Plaintiff Fails To Allege Plausible Facts That Defendant Had Access To The Treatment Or The Pilot.**</u>

### 1. <u>Access Standards</u>

In order to demonstrate "access," a plaintiff must sufficiently allege that the purported infringer had a "reasonable opportunity," not simply a "bare possibility," of seeing the plaintiff's work prior to the creation of the allegedly infringing work. *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 482 (9th Cir. 2000).  Access "may not be inferred through mere speculation or conjecture." *Id.*; *Weiss v. DreamWorks SKG*, No. 14-02890, 2015 WL 12711658, at *3 (C.D. Cal. Feb. 9, 2015) (granting motion to dismiss because allegations of access were "mere conjecture"); *Schkeiban v. Cameron*, No. 12-0636, 2012 WL 12895722, at *1-2 (C.D. Cal. May 10, 2012) (granting motion to dismiss where "[p]laintiff [] pled no facts indicating that it was reasonably possible that defendants had access to the work but rather merely speculate[d] that it occurred without foundation").[13] To survive a motion to dismiss, the plaintiff must allege either: "(i) a particular chain of events . . . between the plaintiff's work and the defendant's access to that work . . . or (ii) that the plaintiff's work has been widely disseminated." *Three Boys Music*, 212 F.3d at 482.

If a plaintiff claims that a defendant obtained access to his or her work via a third party, the plaintiff must allege a sufficient nexus between "the individual who possesses knowledge of a plaintiff's work and the creator of the allegedly infringing work." *Meta-Film Assocs., Inc. v. MCA, Inc.*, 586 F. Supp. 1346, 1356-59, 1364 (C.D.

---

[13]    In *Schkeiban*, the plaintiff alleged that he sent his script to several individuals and entities in the film industry, with the implication that one of those individuals/entities passed the script along to the defendants.  This Court held that such allegations were pure speculation.  2012 WL 12895722, at *1.

Katten
Katten Muchin Rosenman LLP
515 South Flower Street, Suite 1000
Los Angeles, CA 90071-2212
213.788.7450 tel   213.788.7360 fax

Cal. 1984) (even though plaintiff showed his work to a director who was under contract with the defendant studio and worked on the studio lot, he could not demonstrate any connection between that director and the studio's allegedly infringing project); *Griffin v. Peele*, No. 17-01153, 2017 WL 8231241, at *6 (C.D. Cal. Oct. 18, 2017) (no evidence of access where plaintiff's allegations of a chain of events were "unverifiable" and nothing "more than a bare possibility").

In order to sufficiently allege such a nexus, the plaintiff must allege that he/she submitted his/her work to an intermediary who either "*(1) has supervisory responsibility for the allegedly infringing project, (2) contributed ideas and materials to it, or (3) worked in the same unit as the creators.*" *Gable v. Nat'l Broad. Co.*, 727 F. Supp. 2d 815, 826 (C.D. Cal. 2010), *aff'd sub nom. Gable v. Nat'l Broad. Co.*, 438 F. App'x 587 (9th Cir. 2011) (emphasis added); *see also Panton v. Strong*, No. 17-00050, 2018 WL 5099666, at *3 (C.D. Cal. Mar. 14, 2018) (holding that plaintiff had not sufficiently alleged access because even if the intermediary sent plaintiff's work to the director of one episode of the infringing series, plaintiff could not allege that the director gave plaintiff's work to the creators of the infringing series a decade later); *Bernal v. Paradigm Talent & Literary Agency*, 788 F. Supp. 2d 1043, 1057-58 (C.D. Cal. 2010) (no reasonable possibility of access where the plaintiff's script was sent to agent who worked at the same agency as the agent of the infringing show's creator, and there was no evidence beyond speculation that the two discussed the script); *Loomis v. Cornish*, No. 12-5525, 2013 WL 6044349, at *2-4 (C.D. Cal. Nov. 13, 2013), *aff'd* 836 F.3d 991 (9th Cir. 2016) (insufficient evidence of access where plaintiff never met with writers of the allegedly infringing work and the alleged intermediary had no involvement with the creation of the infringing work).

2.     **Plaintiff Has Failed To Allege That Defendant Had Access To The Pilot, And Her Allegations Of Defendant's Purported Access To The Treatment Are Pure Speculation.**

Plaintiff has not alleged that Defendant had *any access whatsoever* to the Pilot. It is apparent that her claims depend entirely and only on Defendant's purported access to the Treatment.   She alleges, upon information and belief, that Defendant's predecessor, CBS, had a "first look deal" with Imagine Impact.  But even if that were true, Plaintiff then further speculates that because she submitted the Treatment to Imagine Impact, Imagine Impact must have provided it to Defendant, and Defendant must have used the Treatment to create *both* the *Bull* Episode and the Proposed *Clueless* Series.

But Plaintiff does not, and cannot, allege that Imagine Impact (or anyone employed by this entity) had *any* involvement in the creation, development or production of the *Bull* Episode or the hypothetical creation and development of the Proposed *Clueless* Series.  *See Meta-Film*, 586 F. Supp. at 1356-59 (plaintiff showed his work to a director who was under contract with the defendant studio and worked on the studio lot, but could not demonstrate any connection between that director and the studio's allegedly infringing project).  Nor has Plaintiff alleged that Imagine Impact had any "supervisory responsibility for the [*Bull* Episode]," "contributed ideas and materials to it" or "worked in the same unit as the creators [of the *Bull* Episode]." *Gable*, 727 F. Supp. 2d at 824.   Plaintiff's allegations, at best, suggest only a speculative chain of access that shows no more than a "bare possibility" of access.  *Id.* Plaintiff's claims therefore fail in their entirety even without comparing the works.

In any event, even if Plaintiff were able to demonstrate that Defendant had legally meaningful access to the Treatment, Plaintiff still must demonstrate that substantial similarity in protected expression exists between it and Defendant's works. *Sid & Marty Krofft Telev. Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1172 (9th

1   Cir. 1977) ("No amount of proof of access will suffice to show copying if there are no

2   similarities.").  As set forth below, Plaintiff is incapable of doing this.

3       **B.     There Is No Substantial Similarity Between The Treatment And**

4       **Either The *Bull* Episode or The Proposed *Clueless* Series.**

5           **1.     Substantial Similarity Standards**

6       Courts routinely dismiss copyright infringement claims at the pleading stage

7   where no substantial similarity is found.  *See*, *e.g.*, *Zella v. E.W. Scripps Co.*, 529 F.

8   Supp. 2d 1124, 1139 (C.D. Cal. 2007).[14]  Since the works themselves are determinative

9   of substantial similarity, not the allegations of the complaint, courts compare the works

10  in dispute and assess whether they are substantially similar in protectable expression.

11  *See, e.g., Scwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000); *Cory Van Rijn,*

12  *Inc. v. Cal. Raisin Advisory Bd.*, 697 F. Supp. 1136, 1138 (E.D. Cal. 1987) (in

13  copyright infringement cases "the works themselves supersede and control any contrary

14  allegations, conclusions or descriptions of the works").

15          a.     The Ninth Circuit's Extrinsic Test For Substantial Similarity

16                 Only Requires An Analysis Of The Protected Elements Of

17                 The Treatment.

18      The Ninth Circuit employs a two-part test that combines an extrinsic and

19  intrinsic analysis to determine substantial similarity, and a plaintiff must satisfy both

20  tests in order to prevail on a copyright infringement claim.  *Rice v. Fox Broad. Co.*, 330

21  F.3d 1170, 1174 (9th Cir. 2003).  A failure to satisfy the extrinsic component on a

22  motion to dismiss requires judgment for the defendant as a matter of law.  *See Funky*

23  *Films,* 462 F.3d at 1077.  The extrinsic test ignores "basic plot ideas" but instead

24  "focuses on 'articulable similarities between the plot, themes, dialogue, mood, setting,

25  pace, characters, and sequence of events' in the two works."  *Funky Films*, 462 F.3d at

26  1077 (quoting *Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1045 (9th Cir.

27

28  ───────────────

[14]     *See also Newt*, 2016 WL 4059691, at *3-12; *Musero,* 2010 WL 11595453, at *2-
6; *Scott*, 2009 WL 10673163, at *2-6; *Campbell*, 718 F. Supp. 2d at 1116.

1994); *see also Berkic v. Crichton*, 761 F.2d 1289, 1293 (9th Cir. 1985).  Notably, the Court must look only at whether the "*protectable elements, standing alone, are substantially similar.*" *Funky Films*, 462 F.3d at 1077 (emphasis in original); *Cavalier*, 297 F.3d at 822.  A motion to dismiss should be granted if, after comparing the works, a court concludes that "no reasonable jury could find that the works are substantially similar, or if it concludes that the similarities pertain only to unprotected elements." *Zella*, 529 F. Supp. 2d at 1131.

b.  <u>Copyright Law Does Not Protect Generalized Themes, Ideas Or Stock Elements.</u>

A claim of substantial similarity must be based on more than "[g]eneral plot ideas [as they] are not protected by copyright law [and] remain forever the common property of artistic mankind."  *Berkic*, 761 F.2d at 1293-94 ("adventures of a young professional who courageously investigates, and finally exposes, the criminal organization" was a basic and unprotected plot); *see also Funky Films*, 462 F.3d at 1081 (general plot idea of a family-run funeral home, the father's death, and the return of the son who assists in maintaining the business was not protected); *Kouf*, 16 F.3d at 1045 (general plot idea of the "life struggle of [shrunken] kids fighting insurmountable dangers" was not protected); *Olson v. Nat'l Broad. Co.*, 855 F.2d 1446, 1450 (9th Cir. 1988) (general idea of a group action-adventure series in which Vietnam veterans do good deeds and are portrayed in a positive light is not protectable); *Campbell*, 718 F. Supp. 2d at 1112 (the young mentee-older mentor storyline is a "'basic plot idea [] not protected by copyright law'"); *Metcalf v. Bochco*, 294 F.3d 1069, 1074 (9th Cir. 2002) ("One cannot copyright the idea of an idealistic young professional choosing between financial and emotional reward, or of love triangles among young professionals that eventually become strained, or of political forces interfering with private action.").

The use of elements that constitute *scènes à faire* or stock scenes that are "indispensable and naturally associated with" generic plotlines, or are standard to the treatment of a certain topic, are also not protectable.  *Rice*, 330 F.3d at 1175, 1177 ("the

sequencing of first performing [a magic] trick and then revealing the secrets behind the trick is . . . *scenes a faire*" and typical of any work about magic tricks); *Benay v. Warner Bros. Entm't, Inc.*, 607 F.3d 620, 627-28 (9th Cir. 2010) (scenes featuring a protagonist sailing into Japan, the Imperial Palace and battle scenes in various places in Japan were s*cènes à faire* and typical of a work centered on "an American war veteran who travels to Japan to help the Emperor fight a samurai rebellion"); *Berkic*, 761 F.2d at 1294 ("[D]epictions of the small miseries of domestic life, romantic frolics at the beach, and conflicts between ambitious young people on one hand, and conservative or evil bureaucracies on the other . . . are familiar scenes and themes [that] are among the very staples of modern American literature."); *Gable*, 727 F. Supp. 2d at 841 (storylines driven by the "basic plot idea of turning one's life around," and "[t]he concept of a bad person spending time in prison, and then trying to clean up their act by making restitution and getting a job are unprotectable *scenes-a-faire*"); *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 50 (2d Cir. 1986) ("elements such as drunks, prostitutes, vermin and derelict cars would appear in any realistic work about . . . policemen in the South Bronx," and thus are unprotectable s*cènes à faire*).   Moreover, numerous differences between two works tend to undercut substantial similarity.  *Gable*, 727 F. Supp. 2d at 841–42 ("Although there are some general similarities between the works, the similarities pale in comparison to the significant differences between the works.").[15]

**2.** **The Treatment And The *Bull* Episode Are Not Substantially Similar In Protected Expression.**

   a. The Plot Of The *Bull* Episode Bears No Similarity To The Plot Of The Treatment.

---

[15]   Defendant's two supposedly infringing works are completely different – the *Bull* Episode is a single show in a series about a trial consulting firm and the Proposed *Clueless* Series is a series based on the young adult drama, *Clueless*. They could not be any more different from each other.  And neither work is even remotely similar to Plaintiff's proposed television series, which is essentially a "whodunit" murder-mystery involving a group of twenty-somethings.

Katten

katten Muchin Rosenman LLP
515 South Flower Street, Suite 1000
Los Angeles, CA 90071-2212
213.788.0443 tel   213.788.7360 fax

Plaintiff alleges that her work and the *Bull* Episode have similar plots because they both center on an African-American female social media influencer, with a history of mental illness, who is manipulated and used as bait by someone close to her to secure a lucrative business deal.  Compl. ¶¶ 20, 22.  This purported similarity is not only a legally meaningless overgeneralization, but is also misleading and inaccurate.

First, there is no indication in the Treatment that Sadie is being controlled by Evvy, much less that she is being used as "bait" in order to secure a lucrative business deal.  Nor is Sadie in the *Bull* Episode used or treated in this way.  In the *Bull* Episode, Sadie Williams's father is her legal guardian due to the acute manic episode that resulted in her involuntary commitment, and he is attempting to sell Sadie's business in order to ensure *her* financial security.  He does not use his daughter as "bait;" to the contrary, the prospective purchasers of Sadie's business do not want Sadie to be the company's brand ambassador going forward.

Second, while the *Bull* Episode focuses heavily on Sadie's ongoing battle with bipolar disorder, the Treatment only tangentially alludes to its protagonist having had a social anxiety disorder and low self-esteem.  There is no notable plotline in the Treatment (or the Pilot) involving Sadie's "experience with a mental illness" other than simply suggesting that she had social anxiety.

Third, Plaintiff describes the overall plotline of the Treatment as centering on the disappearance of the protagonist's friend, Roxy, and the ensuing police investigation.  There simply is no comparable plotline in the *Bull* Episode—rather, this episode focuses on a successful business owner's attempt to end a legal conservatorship in order to regain control over her business and personal life; and even more importantly, it is the story of a daughter and her father and the difficulties with that relationship.[16]

---

[16]   Even if the Court were to compare the Pilot to the *Bull* Episode, the Pilot would fare no better.  For example, the Pilot also does not indicate that Evvy has any control over Sadie (though Evvy does manipulate and control Roxy in the Pilot) or that Evvy is using Sadie to secure a lucrative business deal.  In addition, the Pilot only makes a one-line reference to Sadie having taken anti-anxiety medication years earlier when she was living in New York, which is drastically different from the bipolar disorder that Sadie suffers from in the *Bull* Episode.

Katten
KattenMuchinRosenman LLP
515 South Flower Street, Suite 1000
Los Angeles, CA 90071-2212
213.788.2445 tel   213.788.7580 fax

b.      The Characters In The Treatment Are Not Substantially Similar To Those In The *Bull* Episode.

Generalized character types are not protected by copyright law.  *Rice*, 330 F.3d at 1175; *Kouf*, 16 F.3d at 1046. Only those characters that are "especially distinctive," such as Mickey Mouse and Superman, receive copyright protection.  *Olson*, 855 F.2d at 1452.  By contrast, most literary characters are little more than "the chessmen in the game of telling the story," and are not afforded copyright protection.  *Warner Bros. Pictures, Inc. v. Columbia Broad. Sys., Inc.*, 216 F.2d 945, 949-50 (9th Cir. 1954).

Moreover, "characters which naturally flow from a 'basic plot idea' are 'scenes-a-faire.'"  *Campbell*, 718 F. Supp. 2d at 1115; *see also Cavalier*, 297 F.3d at 825 ("[A] moon character can be considered a stock character for children's literature, and directly flows from the idea of a journey in the night sky."); *Newt*, 2016 WL 4059691, at *5 ("[T]he concept of characters with a troubled past is not protectable.").[17]  If characters "have noticeable differences," the fact that they share some similarities does not establish substantial similarity.  *Silas v. Home Box Office*, 201 F. Supp. 3d 1158, 1177 (C.D. Cal. 2016).  None of the characters in the Treatment (or the Pilot) come close to being sufficiently distinctive to be eligible for copyright protection; and none are even remotely similar to the characters in the *Bull* Episode, in any event.

i. Protagonists

Plaintiff alleges that the protagonists in her proposed television series and the *Bull* Episode are substantially similar because both protagonists (i) have similar names (Sadie Williamson in the Treatment and Sadie Williams in the *Bull* Episode); (ii) are

---

[17]     In general, courts require a very high degree of similarity between characters in order for them to be considered independently copyrightable.  *See Shaw v. Lindheim*, 919 F.2d 1353, 1358 (9th Cir. 1990) (no substantial similarity between characters who were both well educated, wealthy, had expensive tastes, and fought against injustice); *Benay*, 607 F.3d at 626-27 (no substantial similarity between characters who differed in their marital status, job, dreams/nightmares, and ideology); *see also Shame on You Prods., Inc. v. Elizabeth Banks*, 120 F. Supp. 3d 1123, 1165 (C.D. Cal. 2015) *aff'd sub nom. Shame on You Prods., Inc. v. Banks*, No. 15-56372, 2017 WL 1732279 (9th Cir. May 3, 2017) (quoting *Alexander v. Murdoch*, No. 10–5613, 2011 WL 2802899, at *10 (S.D.N.Y. May 27, 2011)) ("'[A] stunningly beautiful, fiery, temperamental, Latina mother, with a thick accent'" is a stock character).

African-American women; (iii) are "social media influencers;" and (iv) have "a history of mental illness."   These supposed similarities are either not protectable under copyright law or gross overgeneralizations of the two vastly different characters.

Although the protagonists in each work have the same first name and a similar last name, names are not copyright protectable.  *See Counts v. Meriwether*, No. 14-00396, 2015 WL 9594469, at *12 (C.D. Cal. Dec. 30, 2015) (noting that the name "Spencer" was not copyrightable).  Further, the last name of the protagonist in the *Bull* Episode (Williams) is the third most common last name according to the U.S. Census Bureau data, and nearly 50 percent of the census respondents with that last name identify as African-American.[18]  *See Marcus v. ABC Signature Studios, Inc.*, 279 F. Supp. 3d 1056, 1063, 1069 (C.D. Cal. 2017) (partially relying on U.S. Census data regarding the commonality of the last name "Johnson" and holding that "the fact that characters have identical names and have similar roles in two works does not necessitate a finding of substantial similarity").  By contrast, the last name of the protagonist in the Treatment (Williamson) is the 267th most common last name according to the same Census Bureau data, and only 17 percent of the census respondents with that last name identify as African-American.  *See* Request for Judicial Notice, Hill Decl., Ex. C.

In addition, the notion of an African-American female protagonist is not copyright protectable; it is merely an idea.  *See Gable*, 727 F. Supp. 2d at 846 (finding no substantial similarity in two characters because "[a]part from being African-American and perhaps the same age," the characters had no other similarities).

Plaintiff generically alleges that both her protagonist and Sadie in the *Bull* Episode are "social media influencers."  In fact, the two protagonists have significantly different personalities and careers.  *See Gable*, 727 F. Supp. 2d at 841–42 ("Although there are some general similarities between the works, the similarities pale in comparison to the significant differences between the works."); *Silas*, 201 F. Supp. 3d

---

[18]    *See* Request for Judicial Notice, Hill Decl., Ex. C.

Katten

Katten Muchin Rosenman LLP

515 South Flower Street, Suite 1000
Los Angeles, CA 90071-2212
213.788.4545 tel   213.788.7565 fax

at 1177 ("noticeable differences" outweigh some shared similarities between characters in a substantial similarity analysis). Plaintiff's protagonist is a superficial and materialistic social media influencer who has an interest in fashion, while the protagonist in the *Bull* Episode is a self-made entrepreneur with a successful makeup company that she, like every other modern business owner, promotes through social media. Plaintiff's protagonist is a self-conscious and naïve young woman who succumbs to the pressures of living in the highly critical world of social media influencers. By contrast, the protagonist in the *Bull* Episode is smart, sympathetic and kind, and she does not appear to be influenced by the perceptions of others.

Furthermore, the Treatment states that the protagonist has an undefined "social anxiety disorder" and low self-esteem. But in stark contrast, the focus of the *Bull* Episode is the protagonist's battle with a much more serious mental illness, bipolar disorder, the impact it has had on her and her struggle to overcome it in order to regain control of her personal and business life.[19]

ii. Secondary Characters

Evvy is described as the antagonist in the Treatment. She is "determined, cutthroat, and assertive." Hill Decl., Ex. A at 59. This is not even a remotely close description of Sadie's father in the *Bull* Episode. At one point in the *Bull* Episode, viewers are led to briefly question Sadie's father's character, when Dr. Bull's forensic accountant discovers that Sadie's father has been transferring funds from Sadie's business to his personal account. However, it is soon revealed that the transfers were payments that Sadie's father made to a photographer whose career Sadie destroyed when she inadvertently injured him during her manic episode. By the end of the

---

[19]   If the Court were to compare the *Bull* Episode and the Pilot, the respective protagonists are even more dissimilar. In the Pilot, Sadie is a borderline sociopath who is willing to hurt anyone in order to retain her status as a celebrity influencer. This is the exact opposite of the Sadie portrayed in the *Bull* Episode, who has only appeared to hurt one person – inadvertently – years ago when she had her manic episode. Further, the Pilot fails to include even a single plotline touching on mental health issues.

Katten
KattenMuchinRosenmanLLP
515 South Flower Street, Suite 1000
Los Angeles, CA 90071-2212
213.788.0443 tel   213.788.7360 fax

episode, it is clear that Sadie's father only wants what is best for her and believes the sale of the company will provide financial security for Sadie's future.

There are also critical differences between Evvy in the Treatment and Sadie's father in the *Bull* Episode:  Sadie's father in the *Bull* Episode is an African-American male who does not work for Sadie, but rather serves as her conservator and is dedicated to her well-being; Evvy, on the other hand, is Sadie's publicist and a Caucasian woman in her 40s who chose her career over her daughter.[20]

Lastly, although there are only three characters discussed in the Treatment (Sadie, Roxy and Evvy), the Pilot includes several other supporting cast members, none of whom have counterparts in the *Bull* Episode.  For example, in the *Bull* Episode, there is no missing young female; Sadie does not have a boyfriend (with or without his own group of male friends) or a "squad" of girlfriends; and there are no police detectives. *See Benay*, 607 F.3d at 627 (finding no substantial similarity in part because "[t]here are a number of important characters in [plaintiff's work] who have no obvious parallel in the [defendant's work]"); *Gable*, 727 F. Supp. 2d at 846 (noting that "there [were] several critical characters in [plaintiff's work] that have no counterpart in [defendants' work]").  So, even if the Court were to consider the Pilot in its substantial similarity analysis, Plaintiff's claim would not improve.

        c.    <u>There Is No Substantial Similarity In Theme, Dialogue, Mood, Setting Or Pace Between The Treatment And The *Bull* Episode</u>.

Even though Plaintiff had a full opportunity to review the *Bull* Episode and to compare it to her proposed television series, she did not identify any purported similarities in the themes, dialogue, mood, setting or pace of the respective works.  That is because there simply are none.

---

[20]    Evvy is portrayed generally in the same way in both the Pilot and the Treatment, although the Treatment includes more background information on her.  However, even if the Court were to compare Evvy as depicted in the Pilot to Sadie's father in the *Bull* Episode, Plaintiff's claim of infringement would fare no better.

For example, Plaintiff describes her work as a murder-mystery set as a multi-episode series; its mood is somber and its pace is consistently intense. By contrast, the *Bull* Episode is a single-episode "procedural" drama; its mood is serious and emotional and its pace is steady. Thus, the mood and pace in each work are substantially different. Further, the majority of the Treatment takes place in Los Angeles, while the majority of the *Bull* Episode occurs in New York, in Dr. Bull's office or in a New York courtroom. Plaintiff describes the theme of the Treatment as centered on a young woman's struggle to adjust to the pressures of living in the limelight, while the *Bull* Episode is about the protagonist's quest for independence from her father.

Last, there is no similar dialogue in the two works. The Treatment contains no dialogue whatsoever; the Pilot has expletives and references to sexual acts, violence and drugs, while no such language or references are present in the *Bull* Episode. *See Newt*, 2016 WL 4059691, at *7 (holding that no similarity in dialogue existed between plaintiff's works which contained "predominantly graphic, violent, and sexual language, and [were] replete with expletives, whereas [defendant's work] … only include[d] occasional expletives")[21]

### 3.  The Treatment And The Proposed *Clueless* Series (As Alleged) Are Not Substantially Similar In Protected Expression.

As will be discussed in the following section, Plaintiff's claim premised on the Proposed *Clueless* Series is not ripe for adjudication. But even if it were and the Court compared the Treatment to what is presently alleged about the Proposed *Clueless* Series, the Court could only conclude that the two works are not substantially similar in protected expression.

Notably, Plaintiff describes her proposed television series for purposes of this infringement claim in a manner that is completely different from how she describes it for purposes of her claim respecting the *Bull* Episode. Plaintiff alleges that her work

---

[21]  Again, even if the Court were to consider the Pilot's theme, dialogue, mood, setting or pace, Plaintiff's claim would not improve.

Katten
Katten Muchin Rosenman LLP
515 South Flower Street, Suite 1000
Los Angeles, CA 90071-2212
213.788.0443 tel   213.788.7760 fax

and the Proposed *Clueless* Series both center on the disappearance of a "queen bee" who is later replaced by her African-American best friend/sidekick.

Even if this turned out to be an accurate comparison of the Treatment and any eventually-completed *Clueless* television series, these alleged similarities are generic and not protected by copyright law.[22]  A plotline centered on the disappearance of a young woman is utterly common and basic, and has been the subject of numerous films and televisions shows.[23]  All of the other alleged similarities constitute unprotectable *scènes à faire* that flow naturally from this basic storyline (including the rise of a replacement "queen bee," an ensuing police investigation and police interviews with the missing girl's friends).  *See Rice*, 330 F.3d at 1175.

## C.   Plaintiff's Claim Premised On The Proposed *Clueless* Series Is Not Ripe For Adjudication, In Any Event.

A claim for copyright infringement is not ripe until the alleged infringer has "'completed all preparatory work'" on the allegedly infringing product.[24]  *Royal Palm Filmworks, Inc. v. Fifty-Six Hope Rd. Music, Ltd.*, No. 17-2336, 2017 WL 4685550, at *4 (C.D. Cal. Aug. 17, 2017), *aff'd*, 747 F. App'x 624 (9th Cir. 2019) (quoting *Kelly v. University Press of Miss.*, No. 16-2960, 2016 WL 4445986, at *4 (C.D. Cal. Aug. 16, 2016)).  In *Royal Palm Filmworks*, the district court dismissed as unripe a declaratory relief claim for copyright infringement involving a future Bob Marley biopic and the intended use of Marley's copyrighted music in the biopic.  The court found that because the screenplay was "unfinished and subject to change," "the relief requested

---

[22]   If the Court were to consider the Pilot instead of or in addition to the Treatment, it would come to the same conclusion.

[23]   As demonstrated in the accompanying Request for Judicial Notice, a storyline involving the disappearance of a teenage girl or young woman and the subsequent investigation into the disappearance appears in motion pictures such as *Megan is Missing*, *Paper Towns*, *Searching*, and *Elsewhere*; and in television series such as *Pretty Little Liars*, *Without a Trace*, and *Law & Order: SVU*.

[24]   A motion to dismiss based on ripeness is properly brought under Rule 12(b)(1). *See S. Pac. Transp. Co*, 922 F.2d at 502 ("Ripeness is more than a mere procedural question; it is determinative of jurisdiction. If a claim is unripe, federal courts lack subject matter jurisdiction and the complaint must be dismissed.").

Katten
KattenMuchinRosenman LLP
515 South Flower Street, Suite 1090
Los Angeles, CA 90071-2212
213.788.7445 tel   213.788.7360 fax

would necessarily take the form of an advisory opinion." *Id.* at \*3. Similarly, in *Kelly*, 2016 WL 4445986, at \*4, the court held that because "any judgment of infringement necessarily rests on 'contingent future events that may not occur as anticipated, or indeed may not occur at all,'" plaintiff's claim was not ripe.

As Plaintiff alleges, she believes that Defendant is currently developing a television series based on the 1995 film *Clueless*. Plaintiff speculates that this proposed series will be substantially similar to her proposed television series based upon no more than a comparison of certain statements contained in media reports about the proposed new series and Plaintiff's own description of her work that she included in the Treatment. Specifically, Plaintiff alleges that in her proposed television series:

> [F]ollowing the disappearance of her best friend, Roxy, Sadie becomes the new number one and balances holding on to that informal title, while she and her group of friends all become suspects in her murder as they try to uncover what happened to Roxy.

Compl., ¶ 30. And, according to a press release, the Proposed *Clueless* Series is described as follows:

> When Cher disappears, Dionne must take on the pressures of being the new most popular girl in school while also unraveling the mystery of what happened to her friend.

[*Id.*]25

Any purported claim of infringement of the Treatment by the Proposed *Clueless* Series simply is too uncertain at this time. Any decision the Court might render would

---

25     Plaintiff also relies on the references to other, existing works that the media reports used to describe the Proposed *Clueless* Series and those that Plaintiff used in the Treatment to describe her own proposed series. According to the media reports, the Proposed *Clueless* Series "actually sounds less like HBO's Euphoria and more like Riverdale-meets-Pretty Little Liars." Compl. ¶ 30. When asked in the Imagine Impact application to identify "[w]hich films or TV shows are most similar to your project in terms of story," Plaintiff responded: "Pretty Little Liars, How to Get Away with Murder, You, Riverdale." *See* Hill Decl., Ex. A at 61. These purported comparisons further demonstrate that the only commonalities between the disputed works are those shared by several other popular young adult television series.

22

Katten

Katten Muchin Rosenman LLP

515 South Flower Street, Suite 1000
Los Angeles, CA 90071-3212
213.788.4400 tel   213.788.7180 fax

rest on future events (*e.g.*, the drafting and finalization of scripts and the production of episodes) that may not occur at all, and would therefore be an impermissible advisory opinion. *Kelly*, 2016 WL 4445986, at *4; *see also Royal Palm Filmworks*, 2017 WL 4685550, at *4.   In short, the future and possible contents of the Proposed *Clueless* Series are too uncertain to provide a basis for a claim of copyright infringement.

## V.   PLAINTIFF'S CLAIM FOR DECLARATORY RELIEF ALSO FAILS.

Plaintiff's claim for declaratory relief is dependent upon the same allegations of copyright infringement.  Accordingly, if the copyright infringement claims fail to state viable claims for relief, the declaratory relief claim fails for the same reasons. *See Marcus*, 279 F. Supp. 3d at 1073 (absent a viable underlying claim for copyright infringement, plaintiff was not entitled to declaratory relief).

## VI.   PLAINTIFF'S CLAIM FOR VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTIONS 17200 *ET SEQ.* IS PREEMPTED BY THE COPYRIGHT ACT.

Plaintiff's state law claim for unfair competition is expressly based on her allegations of copyright infringement.  Compl. ¶¶ 47-49.  The Copyright Act preempts a claim for violation of California Business and Professions Code sections 17200 *et seq.* because this claim does not satisfy the "extra element" test.  *See Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1019 (9th Cir. 2017); *Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209, 1212-13 (9th Cir. 1998).  Therefore, this claim also must be dismissed with prejudice.

## VII.   LEAVE TO AMEND SHOULD BE DENIED.

With respect to Plaintiff's claims based on the *Bull* Episode, no amendment would overcome the lack of substantial similarity between the two works as determined by the works themselves.  Therefore, if the Court finds that the Treatment and the *Bull* Episode are not substantially similar in protected expression, it should dismiss these claims with prejudice.  *Schkeiban v. Cameron*, No. 12-0636, 2012 WL 5636281, at *1 (C.D. Cal. Oct. 4, 2012) *aff'd* 566 F. App'x 616 (9th Cir. 2014) (dismissing complaint

with prejudice because a lack of substantial similarity between works "is a defect that cannot cured by an amended complaint"); *Gilbert v. New Line Prods., Inc.*, No. 09-02231, 2009 WL 7422458, at *6 (C.D. Cal. Nov. 16, 2009), *aff'd*, 490 F. App'x 34 (9th Cir. 2012) (dismissing plaintiff's claim with prejudice based on a lack of substantial similarity because "no additional facts would allow [plaintiff] to prevail in her case").

Plaintiff's claims based on the Proposed *Clueless* Series should also be dismissed. *S. Pac. Transp.*, 922 F.2d at 502 ("If a claim is unripe, federal courts lack subject matter jurisdiction and the complaint must be dismissed."). However, if the Court dismisses these claims based upon a lack of ripeness, Plaintiff should not be granted leave to amend her current Complaint, but the dismissal should be without prejudice to Plaintiff's entitlement to refile her claim, if and when it becomes ripe.

## VIII. CONCLUSION

For all of the reasons set forth above, Defendant respectfully requests that the Court dismiss the Complaint with prejudice as to the *Bull* Episode and state law claims, without prejudice as to the Proposed *Clueless* Series, and award Defendant its attorneys' fees and costs as the prevailing party.

Dated:  March 13, 2020                KATTEN MUCHIN ROSENMAN LLP


By: /s/ *Joanna M. Hill*
Joanna M. Hill
Attorneys for Defendant
ViacomCBS Inc.