David Halberstadter (SBN 107033)
david.halberstadter@katten.com
Joanna M. Hill (SBN 301515)
joanna.hill@katten.com
Shelby A. Palmer (SBN 329450)
shelby.palmer@katten.com
KATTEN MUCHIN ROSENMAN LLP
2029 Century Park East, Suite 2600
Los Angeles, CA  90067-3012
Telephone:  310.788.4400
Facsimile:   310.788.4471

Attorneys for Defendant
ViacomCBS Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| CANDESHA WASHINGTON,<br><br>         Plaintiff<br><br>   v.<br><br>VIACOMCBS, INC.; AND DOES 1 THROUGH 50,<br><br>         Defendants. | Case No. 2:20-cv-00435<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6)**<br><br>[Hon. Consuelo B. Marshall]<br><br>*[Defendant's Request for Judicial Notice; Declaration of Shelby Palmer; and [Proposed] Order filed concurrently herewith]*<br><br>Date:  March 9, 2021<br>Time:  10:00 A.M.<br>Place:  Room 8B |

**TO PLAINTIFF *IN PROPRIA PERSONA*:**

**PLEASE TAKE NOTICE** that on March 9, 2021 at 10:00 a.m., or as soon thereafter as the parties may be heard before the Honorable Consuelo B. Marshall, United States District Judge, in Courtroom 8B of the above-entitled court, located at 350 W. First Street, Los Angeles, California 90012, defendant ViacomCBS Inc. ("Defendant") will and hereby does move to dismiss the Amended Complaint filed by plaintiff Candesha Washington ("Plaintiff") pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

Defendant moves to dismiss on the grounds that Plaintiff has failed to state any claim upon which relief can be granted.  Plaintiff has failed to allege any separately identifiable claims for relief, despite the fact that she lists four purported claims for relief on the face page of the Amended Complaint.  The Amended Complaint lacks many of the required allegations for a claim of copyright infringement, and contains *no* allegations supporting a claim for violations of California Business and Professions Code sections 17200 *et seq*. and *no* allegations supporting a claim for declaratory relief.

To the extent the Amended Complaint reasonably can be construed as attempting to allege a claim for copyright infringement based upon an episode of the television series *Bull*, judgment should be entered in Defendant's favor because (i) Plaintiff has failed to sufficiently allege that any of the creators or writers of the *Bull* episode had legally cognizable access to Plaintiff's works, and (ii) there is clearly no substantial similarity between either of Plaintiff's works and the *Bull* episode as a matter of law.

This Motion is based upon this Notice of Motion and the attached Memorandum of Points and Authorities; the pleadings and papers on file in this action; Defendant's Request for Judicial Notice filed concurrently herewith and any other matters of which the Court may take judicial notice; the Declaration of Shelby A. Palmer; the works previously lodged by Defendant in the Court's record (Dkt. #15-1) and such other evidence and argument that may be presented to this Court at or before the hearing on this Motion.

147513480

**Katten**
KattenMuchinRosenman LLP
515 South Flower Street, Suite 1000
Los Angeles, CA 90071-2212
213.788.0445 tel   213.788.7360 fax

1

2                                      Respectfully submitted,

3   Dated:  February 3, 2021            KATTEN MUCHIN ROSENMAN LLP

4

5                                      By:  /s/  Shelby A. Palmer

6                                          Shelby A. Palmer
                                        Attorneys for Defendant
7                                      ViacomCBS Inc.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

147513480

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION AND PROCEDURAL HISTORY ........................................1

II.   SUMMARY OF THE WORKS ........................................................................3

    A.    Summary Of The Treatment ............................................................3

    B.    Summary Of The Pilot ......................................................................4

    C.    Summary Of The *Bull* Episode .......................................................6

III.  STANDARDS FOR A MOTION TO DISMISS .............................................7

IV.  PLAINTIFF FAILS TO STATE A VIABLE CLAIM FOR COPYRIGHT INFRINGEMENT. ........................................................................................10

    A.    Plaintiff Fails To Allege Plausible Facts That Defendant Had Access To Plaintiff's Works. .......................................................................10

         1.    Access Standards .................................................................10

         2.    Plaintiff's Allegations of Defendant's Purported Access To Her Works Are Pure Speculation ..........................................12

    B.    The Works and The *Bull* Episode Are Not Substantially Similar. .............15

         1.    Substantial Similarity Standards .........................................15

         2.    The Works And The *Bull* Episode Are Not Substantially Similar In Protected Expression. ..........................................17

              a.    As This Court Has Already Ruled, The Treatment And The *Bull* Episode Are Not Substantially Similar In Protected Expression. ..........................................17

              b.    The Alleged Similarities Between the Pilot And *Bull* Episode Are Grossly Inaccurate. ..............................18

              c.    The Remaining Claimed Similarities Between the Pilot and The *Bull* Episode Are Not Protectable Under Copyright Law. ..........................................20

                   i.    Characters ..................................................20

                   ii.   Plot ..............................................................22

                 iii.  Theme, Dialogue, Mood, Setting and Pace ..................23

Katten

Katten Muchin Rosenmann LLP

515 South Flower Street, Suite 1000
Los Angeles, CA 90071-2212
213.788.1345 tel  213.788.7780 fax

147513480

V.    PLAINTIFF'S CLAIM FOR VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTIONS 17200 *ET SEQ.* IS PREEMPTED BY THE COPYRIGHT ACT. ...................................................................23

VI.   PLAINTIFF'S CLAIM FOR DECLARATORY RELIEF ALSO FAILS............24

VII.  CONCLUSION ....................................................24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Katten**
KattenMuchinRosenmanLLP
515 South Flower Street, Suite 1000
Los Angeles, CA 90071-2212
213.788.0443 tel   213.788.7363 fax

147513480

1

## **TABLE OF AUTHORITIES**

2

3                                                                  **Page(s)**

4   **Cases**

5   *Abdullah v. Walt Disney Co.*,
6       714 F. App'x 758 (9th Cir. 2018) ......................................................... 9

7   *Alexander v. Murdoch*,
8       No. 10–5613, 2011 WL 2802899 (S.D.N.Y. May 27, 2011) ............................ 20

9   *Alfred v. Walt Disney Co.*,
        821 F. App'x 727 (9th Cir. 2020) .................................................... 8, 9
10

11  *Ashcroft v. Iqbal*,
        556 U.S. 662 (2009) .................................................................... 7
12

13  *Bell Atl. Corp. v. Twombly*,
        550 U.S. 544 (2007) .................................................................... 7
14

15  *Benay v. Warner Bros. Entm't, Inc.*,
        607 F.3d 620 (9th Cir. 2010) ...................................................... 16, 20

16  *Berkic v. Crichton*,
17      761 F.2d 1289 (9th Cir. 1985) ..................................................... 15, 16

18  *Bernal v. Paradigm Talent & Literary Agency*,
19      788 F. Supp. 2d 1043 (C.D. Cal. 2010) ................................................ 12

20  *Campbell v. Walt Disney Co.*,
        718 F. Supp. 2d 1108 (N.D. Cal. 2010) ........................................... *passim*
21

22  *Cavalier v. Random House, Inc.*,
        297 F.3d 815 (9th Cir. 2002) .................................................. 10, 15, 20
23

24  *Chavez v. U.S.*,
        683 F.3d 1102 (9th Cir. 2012) ......................................................... 8
25

26  *Chey v. Pure Flix Entm't LLC*,
        No. 16-4362, 2017 WL 5479640 (C.D. Cal. Feb. 10, 2017) ............................. 10
27

28  *Cory Van Rijn, Inc. v. Cal. Raisin Advisory Bd.*,
        697 F. Supp. 1136 (E.D. Cal. 1987) ................................................... 15

Katten
KattenMuchinRosenmanLLP
515 South Flower Street, Suite 1000
Los Angeles, CA 90071-2212
213.788.0441 tel   213.788.7360 fax

*Counts v. Meriwether,*
  No. 14-00396, 2015 WL 9594469 (C.D. Cal. Dec. 30, 2015) ..........................21

*Esplanade Prods. v. Walt Disney Co.,*
  768 F. App'x 732 (9th Cir. 2019)................................................................9

*Feist Publ'ns, Inc. v. Rural Tel. Servs. Co.,*
  499 U.S. 340 (1991)................................................................................10

*Funky Films, Inc. v. Time Warner Entm't Co., L.P.,*
  462 F.3d 1072 (9th Cir. 2006) ...............................................................10, 15, 16

*Gable v. Nat'l Broad. Co.,*
  727 F. Supp. 2d 815, 826 (C.D. Cal. 2010), *aff'd sub nom. Gable v.*
  *Nat'l Broad. Co.,* 438 F. App'x 587 (9th Cir. 2011)..............................11, 14, 17

*Griffin v. Peele,*
  No. 17-01153, 2017 WL 8231241 (C.D. Cal. Oct. 18, 2017) ..........................11

*Irish Rover Entertainment, LLC v. Sims,*
  Case No. 20-cv-6293 (C.D. Cal. Filed January 21, 2021) ..................................8

*Kouf v. Walt Disney Pictures & Television,*
  16 F.3d 1042 (9th Cir. 1994) ...............................................................15, 16, 20

*Kullberg v. Pure Flix Entm't LLC,*
  No. 16-3949, 2016 WL 7324155 (C.D. Cal. Oct. 12, 2016) ..........................10

*Litchfield v. Spielberg,*
  736 F.2d 1352 (9th Cir. 1984) ..................................................................8

*Loomis v. Cornish,*
  No. 12-5525, 2013 WL 6044349 (C.D. Cal. Nov. 13, 2013), *aff'd* 836
  F.3d 991 (9th Cir. 2016) ..........................................................................12

*Marcus v. ABC Signature Studios, Inc.,*
  279 F. Supp. 3d 1056 (C.D. Cal. 2017)..................................................21

*Matterson v. Walt Disney Co.,*
  821 F. App'x 779 (9th Cir. 2020)..........................................................9, 24

*Meta-Film Assocs., Inc. v. MCA, Inc.,*
  586 F. Supp. 1346 (C.D. Cal. 1984).......................................................11

iv

*Metcalf v. Bochco*,
    294 F.3d 1069 (9th Cir. 2002) .................................................................8, 16, 22

*Musero, III v. Mosaic Media Grp. Inc.*,
    No. 10-1748, 2010 WL 11595453 (C.D. Cal. Aug. 9, 2010) ........................8, 15

*Newt v. Twentieth Century Fox Film Corp.*,
    No. 15-02778, 2016 WL 4059691 (C.D. Cal. July 27, 2016) .................7, 15, 20

*Olson v. Nat'l Broad. Co.*,
    855 F.2d 1446 (9th Cir. 1988) ...................................................................16, 20

*Panton v. Strong*,
    No. 17-00050, 2018 WL 5099666 (C.D. Cal. Mar. 14, 2018) ...........................11

*Rentmeester v. Nike, Inc.*,
    883 F.3d 1111 (9th Cir. 2018), *overruled on other grounds by Skidmore v. Zepplin*, 952 F.3d 1051 (9th Cir. 2020) .........................................................24

*Rice v. Fox Broad. Co.*,
    330 F.3d 1170 (9th Cir. 2003) .............................................................15, 16, 20

*Schkeiban v. Cameron*,
    No. 12-0636, 2012 WL 12895722 (C.D. Cal. May 10, 2012) ...........................11

*Scott v. Meyer*,
    No. 09-6076, 2009 WL 10673163 (C.D. Cal. Dec. 2, 2009) ........................8, 15

*Shame on You Prods., Inc. v. Banks*,
    690 F. App'x 519 (9th Cir. 2017) .......................................................................9

*Shame on You Prods., Inc. v. Elizabeth Banks*,
    120 F. Supp. 3d 1123 (C.D. Cal. 2015) *aff'd sub nom. Shame on You Prods., Inc. v. Banks*, No. 15-56372, 2017 WL 1732279 (9th Cir. May 3, 2017) ............................................................................................................20

*Shaw v. Lindheim*,
    919 F.2d 1353 (9th Cir. 1990) ..........................................................................20

*Shwarz v. United States*,
    234 F.3d 428 (9th Cir. 2000) ............................................................................15

*Silas v. HBO*,
    713 F. App'x 626 (9th Cir. 2018) .......................................................................9

Katten

KattenMuchinRosenman LLP

515 South Flower Street, Suite 1000
Los Angeles, CA 90071-2212
213.788.4400 tel  213.788.7360 fax

v

*Silas v. Home Box Office*,
   201 F. Supp. 3d 1158 (C.D. Cal. 2016) ...............................................................20

*Thomas v. Walt Disney Co.*,
   337 F. App'x 694 (9th Cir. 2009) .........................................................................3

*Three Boys Music Corp. v. Bolton*,
   212 F.3d 477 (9th Cir. 2000) ...........................................................10, 11, 12, 14

*Walker v. Time Life Films, Inc.*,
   784 F.2d 44 (2d Cir. 1986) ................................................................................17

*Warner Bros. Pictures, Inc. v. Columbia Broad. Sys., Inc.*,
   216 F.2d 945 (9th Cir. 1954) .............................................................................20

*Weiss v. DreamWorks SKG*,
   No. 14-02890, 2015 WL 12711658 (C.D. Cal. Feb. 9, 2015) ...........................11

*Wild v. NBC Universal, Inc.*,
   788 F. Supp. 2d 1083 (C.D. Cal. 2011), *aff'd sub nom. Wild v. NBC
   Universal*, 513 F. App'x 640 (9th Cir. 2013) ......................................................7

*Zella v. E.W. Scripps Co.*,
   529 F. Supp. 2d 1124 (C.D. Cal. 2007) .......................................................15, 16

**Statutes**

17 U.S.C. § 101 *et seq.* ....................................................................................1, 2, 23

Cal. Bus. & Prof. Code § 17200 *et seq.* .............................................................1, 2, 23

**Rules**

Ninth Circuit Rule 36-3 ...............................................................................................9

Fed. R. Civ. P. 12(b)(1) ..............................................................................................1

Fed. R. Civ. P. 12(b)(6) ..............................................................................................1

Katten

KattenMuchinRosenmanLLP

515 South Flower Street, Suite 1000
Los Angeles, CA 90071-2212
213.788.0445 tel   213.788.7360 fax

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

vi

1

2

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION AND PROCEDURAL HISTORY

Plaintiff Candesha Washington's ("Plaintiff") original Complaint purported to state four separate claims for relief:  (1) copyright infringement based upon an individual episode of the television series *Bull* (the "*Bull* Episode"); (ii) copyright infringement based upon a supposedly-planned television remake of the motion picture *Clueless*; (iii) violations of California Business & Professions Code section 17200 *et seq.* ("Section 17200"); and (iv) declaratory relief.  Each claim was separately alleged.

Defendant ViacomCBS ("Defendant") moved to dismiss the original Complaint pursuant to Rules 12(b)(6) and 12(b)(1) of the Federal Rules of Civil Procedure.  On August 20, 2020, after considering the parties' submissions in support of and in opposition to the motion, the Court granted Defendant's motion as to the purported *Clueless* remake with prejudice.  The Court found that because the proposed *Clueless* remake had not yet been produced and no screenplay yet existed, "it is impossible to assess whether the proposed *Clueless* remake will infringe the copyright of Plaintiff, and no concrete legal issue is presented."  [Dkt. #25, p. 10.]

With respect to Plaintiff's copyright infringement claim regarding the *Bull* Episode, the Court found that Plaintiff had failed to adequately allege that Defendant had access to Plaintiff's written treatment, entitled *#SquadGoals* (the "Treatment"), and failed to allege substantial similarities between the Treatment and the *Bull* Episode.  [*Id.* at pp. 6-9.]  The Court dismissed this claim without prejudice.  [*Id.* at p. 11.][1]

The Court concluded that the Copyright Act preempted Plaintiff's Section 17200 claim, and dismissed that claim without prejudice.  Finally, the Court held that

---

[1]    As a preliminary matter, the Court concluded that the allegations of the Complaint related only to the Treatment, and not to Plaintiff's copyrighted pilot script for *#SquadGoals* (the "Pilot").  Accordingly, the Court did not make any rulings with respect to Defendant's access to the Pilot or any substantial similarity between the Pilot and the *Bull* Episode.  [Dkt. #25, p. 6.]

1

1  Plaintiff's claim for declaratory relief "rises and falls with her claim for copyright

2  infringement," and dismissed that claim without prejudice, as well.  [*Id.*]

3      After her counsel withdrew, Plaintiff filed her Amended Complaint.[2]  Unlike the

4  original Complaint, the Amended Complaint contains no separately-stated claims for

5  relief (and no paragraph numbering, for that matter).  Other than the fact that the face

6  page of the Amended Complaint lists four purported causes of action (for copyright

7  infringement, violation of Section 17200, "derivative copyright infringement" and

8  declaratory relief), a reader of the Amended Complaint would not know what claims

9  Plaintiff was attempting to allege or which allegations relate to which specific claims.

10  For example, Section 17200 is not mentioned *anywhere* in the body of the Amended

11  Complaint, which fails to state *any* claim for violation of this statute, much less one that

12  could survive preemption by the Copyright Act.  Similarly, the body of the Amended

13  Complaint contains *no* allegations seeking a judicial declaration of any sort.

14      Reading the Amended Complaint in the light most favorable to Plaintiff, it

15  appears that she is attempting to allege that the *Bull* Episode infringes upon both the

16  Treatment and the Pilot (collectively, the "Works").  However, this claim fares no

17  better than it did the last time.  First, Plaintiff still fails to allege that Defendant

18  obtained legally cognizable access to the Works.  She offers four entirely speculative

19  theories as to how Defendant *might* have obtained access to the Works.[3]  The Court has

20

21  _____

22  [2]      The particular circumstances leading up to the filing of the Amended Complaint
   are more complicated than as explained above, but those details are not relevant to the
23  pending motion.

24  [3]      Specifically, Plaintiff alleges:  (1) that she provided the Works to unaffiliated
   third party Imagine Impact, LLC ("Imagine Impact"), and because Imagine Impact
25  supposedly had a so-called "first look deal" with Defendant's predecessor company,
   CBS Corporation ("CBS"), it might have shared the Works with Defendant; (2) that the
26  director of the *Bull* Episode once worked with the co-founder of Imagine Entertainment
   on a different television series, and the Works might have been shared with Defendant
27  through this prior connection; (3) that the co-creator of the *Bull* series once worked
   with Imagine Entertainment's co-founder on a different project, and the Works might
28  have been shared with Defendant through this prior connection; and (4) that she
   allegedly sent the Works to two individual producers who purportedly were employed
   by CBS, and one or both of them might have shared the Works with Defendant.

2

already rejected the first of these conjectural theories, and the three new theories are even more speculative than the first.

Second, there simply is no substantial similarity between either of the Works and the *Bull* Episode.  The Works and the *Bull* Episode have entirely different plots and characters.  That all three works involve an African-American female protagonist named Sadie provides no legal foundation for an infringement claim; and any other purported similarities between the works are inaccurate, misleading or generic – as this Court has already found with respect to the Treatment[4] – and therefore not entitled to copyright protection.

Accordingly, Defendant respectfully requests that the Court now dismiss the Amended Complaint with prejudice as its defects cannot be cured by amendment.

## II.   SUMMARY OF THE WORKS

### A.   <u>Summary Of The Treatment</u>[5]

The Treatment focuses on protagonist Sadie Williamson, the person she was before she became a celebrity social media influencer and her struggles to adapt to life in the limelight.  The Treatment describes Sadie as a naïve girl from upstate New York who suffers from anxiety and low self-esteem, and who ultimately comes to Los Angeles with dreams of being a celebrity influencer.  Sadie's new "friend," Roxy, is the nastiest influencer of them all, and circumstances quickly devolve when she disappears.

Before coming to Los Angeles, Sadie moved to Manhattan to work for a fashion magazine while simultaneously writing for her own fashion blog.  Evvy, a high-powered publicist, recruits Sadie to move to Los Angeles to become an influencer.

---

[4]     In connection with Defendant's motion to dismiss Plaintiff's original Complaint, the Court compared the Treatment to the *Bull* Episode and concluded there was no substantial similarity between the two works.  [Dkt. #25, pp. 7-9.]

[5]     This Motion's summaries of the Pilot and the Treatment are derived from the Copyright Office's certified Copy of Deposit of these two documents, which are also in the Court's record.  [*See* Dkt. #15-1, pp. 5-70.]  *Thomas v. Walt Disney Co.*, 337 F. App'x 694, 695 (9th Cir. 2009) (district court properly considered materials alleged in complaint in finding no substantial similarity).

147513480

Once in Los Angeles, Sadie succumbs to the pressures of being an "It Girl" by losing weight, changing the way she dresses and getting plastic surgery.

Plaintiff describes the plot as "center[ing] around a murder mystery and discovering who commited [sic] the murder, when they did it, how they did it, why they did it, and what is the consequence of them doing it."  [Dkt. #15-1, p. 61.]  The essential plot question is whether "Sadie [will] be able to evolve into the confident, strong woman that she was born to be without losing her sense of self in a world that's constantly telling her that who she is at her core, is fundamentally not enough[.]  Sadie must come to terms with finding worthiness through her intrinsic value and knowing that she is deserving of love and success without selling out, but she must first learn to love herself."[6]  [*Id.* at p. 63.]

Evvy is the antagonist—a 40-something, cutthroat publicist.  Unlike the Pilot, the Treatment adds that Evvy is working on an exposé about how easy it is to exploit social media influencers to get them to do what you want, and that Sadie is her "guinea pig" test subject.  Evvy is a victim of sexual assault and struggles with her experience.  She also chose her career over being a mother to her daughter.  The Treatment notes that at the end of the Pilot, Evvy's daughter is found dead.  Finally, the Treatment states that the proposed series will include Sadie being betrayed by her best friend, her publicist, her crush and Roxy, and simultaneously cover LGBTQ, mental health and #metoo movement issues.  The Treatment claims that "[t]he true essence of the series is about shame and guilt caused by secrecy."  [*Id.* at p. 68.]

**B.    <u>Summary Of The Pilot</u>**

The 55-page Pilot delves more deeply into the central plot described in the Treatment.  Like the Treatment, the Pilot centers on the suspicious disappearance of a popular social media influencer, Roxy, and the subsequent police investigation into Roxy's "squad," as they were the last people to see her alive.

---

[6]    As the next section will show, the Treatment's description of Sadie is fundamentally at odds with how she is actually depicted in the Pilot.

147513480

The first scene takes place at the opening night of a Los Angeles nightclub that is swarming with onlookers and paparazzi.  A black SUV drives up carrying popular Instagram influencer Sadie Williamson (a bi-racial African-American female in her 20s) and her "squad" of three other social media influencers/girlfriends.[7]  When one of the squad, Jana, asks to walk the red carpet in front of Sadie, Sadie responds by secretly spiking Jana's shot of alcohol with a quick-acting laxative.  After Jana exits the SUV and begins to walk down the red carpet, she collapses on the ground writhing in pain and defecates all over herself.  Throughout the Pilot, Sadie is portrayed as manipulative and selfish, if not a borderline sociopath.

Upon entering the nightclub, Sadie and her squad sit with Sadie's boyfriend, Miles[8], and his friends.  Two detectives arrive and ask the entire group to come with them to the police station to answer some questions about the disappearance of Roxy.

The Pilot occasionally flashes back to earlier in Sadie's life when she was an eager, sweet and quiet assistant to an editor at a New York fashion magazine.  During the flashback, there is a one-line reference to Sadie having taken anti-anxiety pills, but it is unclear why she took them in her past or whether she currently takes any such medications.  The Pilot suggests that Sadie was recruited to come to Los Angeles by Evvy, who was looking for the "next big social media star" to promote.

When the Pilot flashes back to Roxy's life prior to her disappearance, it is revealed that Roxy was being manipulated and controlled by Evvy, who was also Roxy's publicist.  Evvy is a no-nonsense professional who is concerned only with increasing the popularity of her clients, even if at the expense of their well-being.  After Roxy disappears, Evvy essentially transfers all of Roxy's endorsement deals to Sadie.

Sadie, Miles and their respective squads were the last people to see Roxy.  The detectives separately question each of them, and later bring in Evvy for questioning.  At the end of Evvy's interview (which occurs at the end of the Pilot), the police tell Evvy

---

[7]     Sadie and her squad were actually Roxy's squad prior to Roxy's disappearance.
[8]     Miles had been Roxy's boyfriend, but began dating Sadie after Roxy's disappearance.

147513480

Katten
Katten Muchin Rosenman LLP

515 South Flower Street, Suite 1000
Los Angeles, CA 90071-2212
213.788.7445 tel   213.788.7360 fax

1  that they found her car crashed near Runyon Canyon with her assistant, Kaitlyn, dead
2  inside the trunk.  Evvy is devastated and tells the police that Kaitlyn was not just her
3  assistant, but also her daughter.

4      **C.**    <u>**Summary Of The *Bull* Episode**</u>[9]

5      The *Bull* series focuses on the activities and exploits of the fictional Dr. Jason
6  Bull, the founder of one of the most notable trial consulting firms in New York.
7  Dr. Bull's team is comprised of various experts, including a trial defense attorney, a
8  computer hacker and a fashion consultant.  Dr. Bull and his team provide insight and
9  advice to clients facing legal conflicts.[10]  With respect to the *Bull* Episode, Dr. Bull's
10  fashion consultant, who is familiar with the protagonist, Sadie Williams, and her
11  company, brings Sadie's situation to Dr. Bull's attention.

12      Sadie Williams (an African-American female in her early 30s) has a makeup line
13  called *Define Yourself by Sadie* ("Define Yourself").  Sadie started her business when
14  she was only 16 years old, when she began doing makeup videos online after
15  perceiving a need for makeup advice and tips for women of color.  The plot of the
16  episode centers on Sadie's desire to regain control over her company, which her
17  father—who was appointed Sadie's legal conservator for all purposes—wants to sell
18  for a multi-million dollar price.

19      The episode begins with a big company presenting its offer to buy Define
20  Yourself and expand it into the international market.  Sadie's father wants to sell the
21  company, ostensibly in order to make Sadie financially secure for the rest of her life.
22  The acquiring company proposes to have a different "Sadie" spokesperson in each
23  country because it believes a brand representative who looks like the demographic of
24  each country will more effectively sell the products.  But Sadie wants to personally
25  serve as brand ambassador for her company in every market and does not want to sell it

---

26  [9]    A copy of the *Bull* Episode was previously lodged with the Court and is in the
27  Court's record.  [Dkt. #17.]

28  [10]    Each episode features most of the same recurring characters as well as new one-off characters who play limited roles for limited plots.  Sadie is not a recurring character and the *Bull* Episode is a one-episode story arc.

147513480

under these conditions.  Sadie and her father are in direct conflict, but her father, as her conservator, gets to make this business decision, even if it is against Sadie's wishes.

Three years prior, when Sadie's popularity and brand were skyrocketing, Sadie had a public "meltdown."  It was captured on camera and leaked online.  In the midst of filming, Sadie began yelling, throwing things, screaming and kicking everyone around her.  Once hospitalized, Sadie was diagnosed with bipolar disorder.  During her hospitalization and early recovery, Sadie stopped working; her father petitioned the court and was appointed conservator over all of Sadie's affairs.

Now several years later, with the sale of her company at stake, Sadie seeks out Dr. Bull to help her end the conservatorship and stop the sale of her company.  Sadie tells Dr. Bull and his team that she has been stable for almost two years, is taking medication and is in therapy.  The remainder of the episode focuses on the legal proceedings to end the conservatorship, Sadie's relationship with her father and the tension between Dr. Bull and Sadie's father, who appear to have different objectives.

By the conclusion of the episode, it is clear that Sadie's father is only interested in selling Sadie's company in order to protect her and to secure her financial future. The two reconcile and settle their dispute:  Sadie agrees to the sale of the company and her father agrees to end the conservatorship.

## III.   STANDARDS FOR A MOTION TO DISMISS

A motion to dismiss must be granted unless the plaintiff alleges "more than the mere possibility of misconduct;" otherwise, "the complaint has alleged—but it has not 'shown'—that the pleader is entitled to relief."  *Wild v. NBC Universal, Inc.*, 788 F. Supp. 2d 1083, 1097 (C.D. Cal. 2011), *aff'd sub nom. Wild v. NBC Universal*, 513 F. App'x 640 (9th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level.").  Although a plaintiff's allegations are generally taken as true, "labels and conclusions" are insufficient to defeat a motion to dismiss.  *Newt v. Twentieth Century Fox Film Corp.*, No. 15-02778, 2016 WL

Katten
Katten Muchin Rosenman LLP
515 South Flower Street, Suite 1000
Los Angeles, CA 90071-2212
213.788.7645 tel   213.788.7360 fax

147513480

4059691, at *1 (C.D. Cal. July 27, 2016); *Chavez v. U.S.*, 683 F.3d 1102, 1108 (9th Cir. 2012) ("Mere conclusory statements in a complaint and 'formulaic recitations of the elements of a cause of action' are not sufficient."). Moreover, "when the copyrighted work and the alleged infringement are both before the court, capable of examination and comparison, non-infringement can be determined on a motion to dismiss." *Campbell v. Walt Disney Co.*, 718 F. Supp. 2d 1108, 1111 (N.D. Cal. 2010).[11]

Defendant is aware that this Court recently denied a motion to dismiss a copyright claim in an unrelated lawsuit, finding that "additional evidence such as expert testimony may help inform the question of substantial similarity in this case." *Irish Rover Entertainment, LLC v. Sims*, Case No. 20-cv-6293, at Dkt. #40 (C.D. Cal. Filed January 21, 2021). This Court relied, in turn, on the Ninth Circuit's recent decision in *Alfred v. Walt Disney Co.*, 821 F. App'x 727 (9th Cir. 2020). Quoting from *Alfred*, this Court concluded: "at this stage of the litigation, it is difficult to know whether [various common elements identified by the defendants] are indeed unprotectible material."

This case is materially different from *Alfred* – as this Court already concluded in its Order granting Defendant's motion to dismiss Plaintiff's original Complaint.[12] In *Alfred*, the appellate court agreed with the plaintiffs that their screenplay shared sufficient similarities with the film *Pirates of the Caribbean: Curse of the Black Pearl* to survive a motion to dismiss.[13] While the district court had concluded that many of

---

[11]   *See also Musero, III v. Mosaic Media Grp. Inc.*, No. 10-1748, 2010 WL 11595453, at *2-6 (C.D. Cal. Aug. 9, 2010) (dismissing complaint and comparing plaintiff's screenplay with the movie *Bruno*); *Scott v. Meyer*, No. 09-6076, 2009 WL 10673163, at *2-6 (C.D. Cal. Dec. 2, 2009) (dismissing complaint and comparing plaintiff's novel with *Twilight* saga novel).

[12]   The Court observed: "Unlike *Alfred* and *Metcalf*, however, this Complaint fails to allege (or describe) the similarities in the arrangement of generic elements in the two works," noting "'. . . [w]e are particularly cautious where . . . the list emphasizes random similarities scattered throughout the works.'"   [Dkt. #25, p. 8.] (quoting *Litchfield v. Spielberg*, 736 F.2d 1352, 1356 (9th Cir. 1984).

[13]   Among other things, both works "begin with a prologue that takes place ten years prior to the main story; introduce the main characters during a battle, at gunpoint; involve treasure stories that take place on islands and in jewel-filled caves; include past stories of betrayal by a former first mate; contain fearful moments driven by skeleton crews; focus on the redemption of a young, rogue pirate; and share some similarities in dialogue and tone." *Alfred*, 821 F. App'x at 729.

Katten
KattenMuchinRosenmanLLP
515 South Flower Street, Suite 1000
Los Angeles, CA 90071-2212
213.788.0243 tel   213.788.7280 fax

the alleged similarities between the works were "unprotected generic, pirate-movie tropes," (*id.* at 729), the Ninth Circuit was concerned that "the blockbuster *Pirates of the Caribbean* film franchise may itself have shaped what are now considered pirate-movie tropes." *Id.* It therefore concluded that expert testimony "would be particularly useful in this circumstance" to help determine "whether such elements are indeed unprotectible material." *Id.*

None of the circumstances present in *Alfred* exist in the present case. Moreover, as an unpublished decision, *Alfred* is not binding precedent. Ninth Circuit Rule 36-3.[14] Not only did the decision <u>not</u> establish a presumption against granting motions to dismiss based on an absence of substantial similarity, the overwhelming weight of Ninth Circuit precedent <u>supports</u> dismissing copyright claims on this basis when no reasonable fact-finder could find the works substantially similar in protected expression.[15] Notably, following *Alfred*, the Ninth Circuit recognized that there will be times "where the court's judicial experience and common sense shows that the claims are not plausible." *Matterson v. Walt Disney Co.*, 821 F. App'x 779, 780 (9th Cir. 2020).

Furthermore, this Court has already ruled as a matter of law (in connection with Defendant's motion to dismiss the original Complaint) that: (i) "courts can determine whether substantial similarity exists on a motion to dismiss if both the copyrighted and allegedly infringing works are before the court, and there is no reasonable basis upon

---

[14]   Ninth Circuit Rule 36-3 provides: "Unpublished dispositions and orders of this Court are not precedent, except when relevant under the doctrine of law of the case or rules of claim preclusion or issue preclusion."

[15]   *See, e.g., Masterson*, 821 F. App'x at 780 (affirming dismissal of infringement claim after district court compared the film *Inside Out* with plaintiff's film script); *Esplanade Prods. v. Walt Disney Co.*, 768 F. App'x 732, 733-34 (9th Cir. 2019) (affirming dismissal after district court compared the film *Zootopia* with plaintiff's work); *Silas v. HBO*, 713 F. App'x 626, 627 (9th Cir. 2018) (same); *Abdullah v. Walt Disney Co.*, 714 F. App'x 758, 759 (9th Cir. 2018) (same); *Shame on You Prods., Inc. v. Banks*, 690 F. App'x 519 (9th Cir. 2017) (affirming dismissal of infringement claim after district court expressly refused to consider expert reports).

147513480

Katten

3/5 South Flower Street, Suite 1000
Los Angeles, CA 90071-2212
213.788.0445 tel   213.788.7760 fax

which a jury could find the two works substantially similar;" (ii) "[t]he Complaint does not allege similarities between #Squadgoals and the *Bull* episode;" and (iii) Plaintiff failed to demonstrate how any of the alleged similarities "are 'particularly selected and arranged' in a manner different than commonplace elements or a random selection thereof." [Dkt. #25, pp. 5, 7, 8.] These determinations continue to be applicable to the allegations of the Amended Complaint.

## IV. PLAINTIFF FAILS TO STATE A VIABLE CLAIM FOR COPYRIGHT INFRINGEMENT.

To prevail on a claim for copyright infringement, a plaintiff must show (i) ownership of a valid copyright[16] and (ii) that the defendant copied original elements of that work. *Feist Publ'ns, Inc. v. Rural Tel. Servs. Co.*, 499 U.S. 340, 361 (1991); *see also Funky Films, Inc. v. Time Warner Entm't Co., L.P.*, 462 F.3d 1072, 1076 (9th Cir. 2006). The second prong of this analysis requires that the plaintiff establish that "the infringer had access to [his or her] copyrighted work and that the works at issue are substantially similar in their protected elements." *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002); *see also Funky Films*, 462 F.3d at 1076.[17]

### A. Plaintiff Fails To Allege Plausible Facts That Defendant Had Access To Plaintiff's Works.

#### 1. Access Standards

In order to demonstrate "access," a plaintiff must sufficiently allege that the purported infringer had a "reasonable opportunity," not simply a "bare possibility," of seeing the plaintiff's work prior to the creation of the allegedly infringing work. *Three*

---

[16] The Amended Complaint does not allege Plaintiff's ownership of a valid copyright. She did allege such ownership in her original Complaint. [Dkt. #2, ¶ 19.] Accordingly, Defendant will assume that Plaintiff can satisfy this requirement for purposes of this Motion.

[17] To the extent Plaintiff's Amended Complaint purports to allege that Defendant infringed her copyright by preparing an unauthorized derivative work, the standard is still the same. *See Kullberg v. Pure Flix Entm't LLC*, No. 16-3949, 2016 WL 7324155, at *1 (C.D. Cal. Oct. 12, 2016) (dismissing plaintiff's copyright claim based on defendants' alleged unauthorized derivative work because the works at issue were not substantially similar); *Chey v. Pure Flix Entm't LLC*, No. 16-4362, 2017 WL 5479640, at *4 (C.D. Cal. Feb. 10, 2017) (same).

147513480

Katten
Katten Muchin Rosenman LLP
515 South Flower Street, Suite 1000
Los Angeles, CA 90071-2212
213.788.0445 tel   213.788.7280 fax

*Boys Music Corp. v. Bolton*, 212 F.3d 477, 482 (9th Cir. 2000).  Access "may not be inferred through mere speculation or conjecture." *Id.*; *Weiss v. DreamWorks SKG*, No. 14-02890, 2015 WL 12711658, at *3 (C.D. Cal. Feb. 9, 2015) (granting motion to dismiss because allegations of access were "mere conjecture"); *Schkeiban v. Cameron*, No. 12-0636, 2012 WL 12895722, at *1-2 (C.D. Cal. May 10, 2012) (granting motion to dismiss where "[p]laintiff [] pled no facts indicating that it was reasonably possible that defendants had access to the work but rather merely speculate[d] that it occurred without foundation").  To survive a motion to dismiss, the plaintiff must allege either: "(i) a particular chain of events . . . between the plaintiff's work and the defendant's access to that work . . . or (ii) that the plaintiff's work has been widely disseminated." *Three Boys Music*, 212 F.3d at 482.

If a plaintiff claims that a defendant obtained access to his or her work via a third party, the plaintiff must allege a sufficient nexus between "the individual who possesses knowledge of a plaintiff's work and the creator of the allegedly infringing work." *Meta-Film Assocs., Inc. v. MCA, Inc.*, 586 F. Supp. 1346, 1356-59, 1364 (C.D. Cal. 1984) (even though plaintiff showed his work to a director who was under contract with the defendant studio and worked on the studio lot, he could not demonstrate any connection between that director and the studio's allegedly infringing project); *Griffin v. Peele*, No. 17-01153, 2017 WL 8231241, at *6 (C.D. Cal. Oct. 18, 2017) (no evidence of access where plaintiff's allegations of a chain of events were "unverifiable" and nothing "more than a bare possibility").

In order to sufficiently allege such a nexus, the plaintiff must allege that he/she submitted his/her work to an intermediary who either:  "(1) has supervisory responsibility for the allegedly infringing project, (2) contributed ideas and materials to it, or (3) worked in the same unit as the creators." *Gable v. Nat'l Broad. Co.*, 727 F. Supp. 2d 815, 826 (C.D. Cal. 2010), *aff'd sub nom. Gable v. Nat'l Broad. Co.*, 438 F. App'x 587 (9th Cir. 2011) (emphasis added); *see also Panton v. Strong*, No. 17-00050, 2018 WL 5099666, at *3 (C.D. Cal. Mar. 14, 2018) (holding that plaintiff had not

11

sufficiently alleged access because even if the intermediary sent plaintiff's work to the director of one episode of the infringing series, plaintiff could not allege that the director gave plaintiff's work to the creators of the infringing series a decade later); *Bernal v. Paradigm Talent & Literary Agency*, 788 F. Supp. 2d 1043, 1057-58 (C.D. Cal. 2010) (no reasonable possibility of access where the plaintiff's script was sent to agent who worked at the same agency as the agent of the infringing show's creator, and there was no evidence beyond speculation that the two discussed the script); *Loomis v. Cornish*, No. 12-5525, 2013 WL 6044349, at *2-4 (C.D. Cal. Nov. 13, 2013), *aff'd* 836 F.3d 991 (9th Cir. 2016) (insufficient evidence of access where plaintiff never met with writers of the allegedly infringing work and the alleged intermediary had no involvement with the creation of the infringing work).[18]   As explained below, Plainitff fails to allege any such sufficient nexus.

### 2. Plaintiff's Allegations of Defendant's Purported Access To Her Works Are Pure Speculation.

In her Amended Complaint, Plaintiff offers four unrelated theories as to how Defendant possibly might have obtained access to her Works:

(1)   Defendant's predecessor company, CBS, had a "first look" deal with Imagine Impact, to which Plaintiff submitted her Works for its consideration;

(2)   Dan Lerner, who is the credited director of the *Bull* Episode, once worked with Brian Grazer, the co-founder of Imagine Entertainment, on the television series *Friday Night Lights*;

(3)   Paul Attanasio, who is credited as one of the co-creators of the *Bull* series, once worked with Mr. Grazer and Ron Howard, Imagine Entertainment's other co-founder, on a project entitled *Eden*; and

---

[18]   In its August 20, 2020 Order granting Defendant's motion to dismiss Plaintiff's original Complaint, this Court acknowledged these legal principles, citing to both *Three Boys Music Corp.* and *Loomis*.  [Dkt. # 25, p. 6.]

147513480

(4)  Plaintiff allegedly sent her Works by email to Shima "Azarafa"[19] and Olivia Hass, who Plaintiff alleges are producers employed by CBS.

Each of these theories is utterly speculative, and fails as a matter of law to state a cognizable claim of access by Defendant to Plaintiff's Works.

First, this Court has already *rejected* the so-called "first look" deal with Imagine Impact as legally insufficient to establish access:

> Here, Plaintiff alleges she submitted her treatment to Imagine, who worked with ViacomCBS pursuant to a "first-look deal."  (Compl. at ¶ 31.)  Thus, Plaintiff alleges access via an intermediary.  The Complaint does not allege ViacomCBS received the treatment.  (*Id.*)  Therefore, whether ViacomCBS had a reasonable opportunity to view Plaintiff's work is speculative.

[Dkt. #25, pp. 6-7.]  Plaintiff has made no changes to this theory of access, other than to allege that she submitted *both* the Pilot and the Treatment to Imagine Impact. [Amended Complaint, p. 2.][20]

Second, the fact that the director of the *Bull* Episode might have once worked with Mr. Grazer on an unrelated television series (*Friday Night Lights*) is just as speculative, if not more so, than her allegations of access through Imagine Impact. Plaintiff cannot and does not allege that Mr. Grazer was ever in possession of her Works or that he provided them to Mr. Lerner; and the mere fact that the two previously may have worked together on an unrelated television series does not permit

---

[19]     Plaintiff misspells Ms. Azarafza's name in her Amended Complaint.  She spelled it correctly in the declaration she supplied in opposition to Defendant's motion to dismiss the original Complaint.  [*See* Dkt. #20-1 at p. 2.]

[20]     Clearly unable to allege that anyone at Imagine Impact actually shared her works with anyone involved in the production of the *Bull* Episode, Plaintiff claims that in January 2020, she met with Rich Battista, the former president of Imagine Entertainment (not Imagine Impact), who Plaintiff alleges is her mentor.  Plaintiff purportedly outlined her claims against Defendant, and Mr. Battista allegedly told her, "I'm really sorry that happened to you."  [Amended Complaint, p. 3.]  Plaintiff asserts that Mr. Battista's response was "a tacit admission of guilt."  [*Id.*]  This is absurd – Mr. Battista's expression of sympathy for Plaintiff does not even constitute an admission of wrongdoing on behalf of Imagine Entertainment, much less an admission *by Defendant* that it obtained access to Plaintiff's works through either third party.

147513480

Katten
KattenMuchinRosenmanLLP
515 South Flower Street, Suite 1000
Los Angeles, CA 90071-2212
213.788.0445 tel   213.788.7769 fax

1  any inference of access by Defendant to her Works.  And, as a matter of indisputable

2  fact, Mr. Lerner worked on only a single episode of *Friday Night Lights* **in 2006**,

3  13 years before Plaintiff submitted her works to Imagine Impact.  [Request for Judicial

4  Notice ("RJN"), ¶ 3 and Palmer Declaration, Exhs. A and B.]

5          Third, Plaintiff's allegations that the co-creator of the *Bull* series once worked on

6  a project with Mr. Grazer and Mr. Howard is just as speculative as her allegations

7  respecting Mr. Lerner.  [Amended Complaint, pp. 3-4.]  Plaintiff cannot and does not

8  allege that Mr. Grazer and/or Mr. Howard were ever in possession of her Works or that

9  either of them provided her Works to Mr. Attanasio.  The mere fact that they previously

10  might have worked together on an unrelated project does not permit any inference of

11  access by Defendant to her Works.  And, as a matter of indisputable fact, Mr. Attanasio

12  was hired by Universal Pictures **in 2004** – 15 years before Defendant submitted her

13  works to Imagine Impact – to adapt John Steinbeck's classic novel *East of Eden* for a

14  remake that Mr. Howard was going to direct with Mr. Grazer producing.  [RJN, ¶ 4 and

15  Palmer Declaration, Exh. C.]

16          Fourth, since neither Ms. Azarafza nor Ms. Hass is alleged to be a producer of

17  the *Bull* Episode, they too are purported intermediaries.  However, Plaintiff has not

18  alleged – and cannot allege – that either Ms. Azarafza or Ms. Hass had supervisory

19  responsibility for the *Bull* Episode, contributed ideas and materials to it, or worked in

20  the same unit as the creators of the *Bull* Episode.  *Gable v. Nat'l Broad. Co.*, 727 F.

21  Supp. 2d 815, 826 (C.D. Cal. 2010), *aff'd sub nom. Gable v. Nat'l Broad. Co.*, 438 F.

22  App'x 587 (9th Cir. 2011).  In fact, it is indisputable that Ms. Azarafza and Ms. Hass

23  had no involvement with the *Bull* Episode.  [RJN, ¶¶ 5-6 and Palmer Declaration, Exhs.

24  E, F and G.]

25          In summary, the Amended Complaint fails to allege any credible facts that, even

26  if taken as true, would establish that Defendant had a "reasonable opportunity" to view

27  Plaintiff's Works.  *Three Boys Music Corp.*, 212 F.3d 477, 482 (9th Cir. 2000).

28  Plaintiff's allegations are pure conjecture.  Frankly, Plaintiff's allegations do not even

147513480

rise to the level of a legally insufficient "bare possibility."  For these reasons alone, Plaintiff's claims should now be dismissed with prejudice.

### B.    The Works and The *Bull* Episode Are Not Substantially Similar.

#### 1.    Substantial Similarity Standards

Courts routinely dismiss copyright infringement claims at the pleading stage where no substantial similarity is found.  *See*, *e.g.*, *Zella v. E.W. Scripps Co.*, 529 F. Supp. 2d 1124, 1139 (C.D. Cal. 2007).[21]  Since the works themselves are determinative of substantial similarity, not the allegations of the complaint, courts compare the works in dispute and assess whether they are substantially similar in protectable expression. *See, e.g., Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000); *Cory Van Rijn, Inc. v. Cal. Raisin Advisory Bd.*, 697 F. Supp. 1136, 1138 (E.D. Cal. 1987) (in copyright infringement cases "the works themselves supersede and control any contrary allegations, conclusions or descriptions of the works").

The Ninth Circuit employs a two-part test that combines an extrinsic and intrinsic analysis to determine substantial similarity, and a plaintiff must satisfy both tests in order to prevail on a copyright infringement claim.  *Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1174 (9th Cir. 2003).  A failure to satisfy the extrinsic component on a motion to dismiss requires judgment for the defendant as a matter of law.  *See Funky Films*, 462 F.3d at 1077.  The extrinsic test ignores "basic plot ideas" but instead "focuses on 'articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events' in the two works." *Funky Films*, 462 F.3d at 1077 (quoting *Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1045 (9th Cir. 1994); *see also Berkic v. Crichton*, 761 F.2d 1289, 1293 (9th Cir. 1985).  Notably, the Court must look only at whether the "*protectable elements, standing alone*, are substantially similar." *Funky Films*, 462 F.3d at 1077 (emphasis in original); *Cavalier*, 297 F.3d at 822.  A motion to dismiss should be granted if, after comparing the works,

---

[21]    *See also Newt*, 2016 WL 4059691, at *3-12; *Musero,* 2010 WL 11595453, at *2-6; *Scott*, 2009 WL 10673163, at *2-6; *Campbell*, 718 F. Supp. 2d at 1116.

Katten
Katten Muchin Rosenman LLP
515 South Flower Street, Suite 1000
Los Angeles, CA 90071-2212
213.788.5454 tel   213.788.7360 fax

147513480

a court concludes that "no reasonable jury could find that the works are substantially similar, or if it concludes that the similarities pertain only to unprotected elements." *Zella*, 529 F. Supp. 2d at 1131.

A claim of substantial similarity must be based on more than "[g]eneral plot ideas [as they] are not protected by copyright law [and] remain forever the common property of artistic mankind."  *Berkic*, 761 F.2d at 1293-94 ("adventures of a young professional who courageously investigates, and finally exposes, the criminal organization" was a basic and unprotected plot); *see also Funky Films*, 462 F.3d at 1081 (general plot idea of a family-run funeral home, the father's death, and the return of the son who assists in maintaining the business was not protected); *Kouf*, 16 F.3d at 1045 (general plot idea of the "life struggle of [shrunken] kids fighting insurmountable dangers" was not protected); *Olson v. Nat'l Broad. Co.*, 855 F.2d 1446, 1450 (9th Cir. 1988) (general idea of a group action-adventure series in which Vietnam veterans do good deeds and are portrayed in a positive light is not protectable); *Campbell*, 718 F. Supp. 2d at 1112 (the young mentee-older mentor storyline is a "'basic plot idea [] not protected by copyright law'"); *Metcalf v. Bochco*, 294 F.3d 1069, 1074 (9th Cir. 2002) ("One cannot copyright the idea of an idealistic young professional choosing between financial and emotional reward, or of love triangles among young professionals that eventually become strained, or of political forces interfering with private action.").

The use of elements that constitute s*cènes à faire* or stock scenes that are "indispensable and naturally associated with" generic plotlines, or are standard to the treatment of a certain topic, are also not protectable.  *Rice*, 330 F.3d at 1175, 1177 ("the sequencing of first performing [a magic] trick and then revealing the secrets behind the trick is . . . *scenes a faire*" and typical of any work about magic tricks); *Benay v. Warner Bros. Entm't, Inc.*, 607 F.3d 620, 627-28 (9th Cir. 2010) (scenes featuring a protagonist sailing into Japan, the Imperial Palace and battle scenes in various places in Japan were s*cènes à faire* and typical of a work centered on "an American war veteran who travels to Japan to help the Emperor fight a samurai rebellion"); *Berkic*, 761 F.2d

Katten
KattenMuchinRosenman LLP
525 South Flower Street, Suite 1500
Los Angeles, CA 90071-2212
213.788.0243 tel   213.788.7282 fax

16

at 1294 ("[D]epictions of the small miseries of domestic life, romantic frolics at the beach, and conflicts between ambitious young people on one hand, and conservative or evil bureaucracies on the other . . . are familiar scenes and themes [that] are among the very staples of modern American literature."); *Gable*, 727 F. Supp. 2d at 841 (storylines driven by the "basic plot idea of turning one's life around," and "[t]he concept of a bad person spending time in prison, and then trying to clean up their act by making restitution and getting a job are unprotectable *scenes-a-faire*"); *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 50 (2d Cir. 1986) ("elements such as drunks, prostitutes, vermin and derelict cars would appear in any realistic work about . . . policemen in the South Bronx," and thus are unprotectable s*cènes à faire*).   Moreover, numerous differences between two works tend to undercut substantial similarity.  *Gable*, 727 F. Supp. 2d at 841–42 ("Although there are some general similarities between the works, the similarities pale in comparison to the significant differences between the works.").

### 2.   The Works And The *Bull* Episode Are Not Substantially Similar In Protected Expression.

  a.   As This Court Has Already Ruled, The Treatment And The *Bull* Episode Are Not Substantially Similar In Protected Expression.

In her original Complaint, Plaintiff alleged that the Treatment and the *Bull* Episode were substantially similar because (1) the protagonists have similar names; (2) both protagonists are African-American social media influencers who suffer from a mental illness; (3) both protagonists rose to fame from humble beginnings; and (4) both works feature a plot point in which the protagonist is manipulated to secure a better economic opportunity for her brand.  In the Court's Order granting Defendant's motion to dismiss Plaintiff's original Complaint, it compared the Treatment and the *Bull* Episode, and noted that Plaintiff did not explain how these alleged generic similarities were "particularly selected and arranged in a manner different than commonplace elements or a random selection thereof."  [Dkt. #25, p. 8.]  Essentially, the alleged

Katten
Katten Muchin Rosenman LLP
515 South Flower Street, Suite 1000
Los Angeles, CA 90071-2212
213.788.7483 tel   213.788.7360 fax

similarities based on the protagonists' names, race, careers, mental illnesses, and backgrounds do not satisfy the extrinsic test.   The court also noted the numerous glaring differences that exist between the Treatment and the *Bull* Episode:  the different overall plots and the secondary characters that "bear no resemblance to each other." [*Id.* at p. 9.][22]

The Amended Complaint embellishes Plaintiff's list of claimed similarities. These additions are inaccurate and ultimately irrelevant insofar as they relate to the Treatment, because this Court has already compared it to the *Bull* Episode and has held that the two works are not substantially similar in protected expression.

      b. <u>The Alleged Similarities Between the Pilot And *Bull* Episode Are Grossly Inaccurate.</u>

The alleged commonalities between the Pilot and the *Bull* Episode are legally insignificant over-generalizations, and at times, plainly inaccurate.  Plaintiff alleges that both protagonists come from single-parent homes.  [Amended Complaint, pp. 7, 10.] There is no reference whatsoever to Sadie's family background in the Pilot, much less that she was raised by a single parent, or why.  While Sadie's father is the only parent present in the *Bull* Episode, the episode gives no information about Sadie's mother.

Plaintiff asserts that the protagonists in both works "suffer[ed] in silence" with respect to their "mental illnesses" for "fear of being stigmatized."  [*Id.*  at pp. 5, 7, 10.] However, there is no notable plotline in the Pilot involving Sadie's silent battle with mental illness, other than a suggestion that she had social anxiety and low self-esteem.[23] By contrast, the *Bull* Episode focuses heavily on Sadie's ongoing battle with bipolar

---

[22]  The Court observed:  *"#SquadGoals* is akin to a "whodunnit" murder mystery, while the *Bull* episode is akin to a courtroom procedural; the plot of *#SquadGoals* focuses on the social dynamics of a group of friends after the suspicious disappearance of their leader, while the plot of the *Bull* episode focuses on the protagonist attempting to end her father's legal guardianship over her; and the secondary characters of the works bear no resemblance to each other.  [Dkt. #25, pp. 8-9.]

[23]  Plaintiff alleges in her Amended Complaint that both protagonists have eating disorders.  [Amended Complaint, pp. 7, 9.]  This is inaccurate.  Sadie in the *Bull* Episode suffers from bipolar (not an eating) disorder.  In the Pilot, Sadie pulls on plush parts of her body to see if she is fat.

Katten
Katten Muchin Rosenman LLP
515 South Flower Street, Suite 1000
Los Angeles, CA 90071-2212
213.786.0445 tel   213.788.7180 fax

147513480

1    disorder, her very public meltdown, the conservatorship that a court imposed as a

2    consequence of that meltdown, and the jury trial to end her father's conservatorship.

3        The plots around the protagonists' careers also are not similar.  Plaintiff alleges

4    that both protagonists are "transitioning from an influencer to a mega-star by securing

5    an international beauty brand endorsement deal that threatens the integrity of her

6    brand." [*Id*. at p. 8.]  Yet, neither protagonist is transitioning into a mega-star.  There

7    is very little plot in the Pilot regarding what Sadie's next career move will be and how

8    it will affect her brand.[24]  Defendant's protagonist in the *Bull* Episode, by contrast, is

9    deciding whether to sell her brand to a company that will remove her as its face— a

10   decision that would arguably make her *less* of a "mega-star."

11       Plaintiff alleges that both protagonists are trying to step into their own identities

12   and find "their unique voices."  [*Id*.]  In the Pilot, Plaintiff's protagonist has merely

13   benefited from Roxy's disappearance because all of Roxy's influencer campaigns went

14   to Sadie; she is not searching for her own identity or unique voice.  In the *Bull* Episode,

15   Sadie's only goal is to end her father's conservatorship; she already has a distinct voice

16   and identity and is not engaged in any search to find it.  Plaintiff asserts that "race" in

17   the Pilot and the *Bull* Episode is expressed in a similar way because both protagonists

18   are the only influencers of color in their industries.  This, too, is inaccurate.  In the *Bull*

19   Episode, Sadie does make note that she started her brand because she perceived a need

20   for makeup and makeup tips specifically for women of color.  The Pilot does not focus

21   on its protagonist's race at all.

22       Lastly, Plaintiff alleges that both protagonists are unaware their "managers" are

23   "betraying" them.  [*Id*. at p. 10.]  In the Pilot, Evvy is Sadie's *publicist*, not her

24   manager, and the Pilot makes no reference to Evvy's purported betrayal of Sadie (that

25   _____

26   [24]    Plaintiff also alleges that the Pilot and the *Bull* Episode are similar because in
     both there is a "global beauty brand that wants [the protagonist] to conform to
27   mainstream beauty standards." [Amended Complaint, p. 10.]  Again, this is inaccurate.
     In the *Bull* Episode, the global brand wants a completely new face for Sadie's brand,
28   and does not pressure Sadie to "conform to mainstream beauty standards."  There is no
     global brand whatsoever in the Pilot, much less one that wants Plaintiff's protagonist to
     conform to mainstream standards of any sort.

Katten
Katten Muchin Rosenman LLP
525 South Flower Street, Suite 1000
Los Angeles, CA 90071-2212
213.788.2343 tel   213.788.7781 fax

147513480

idea exists only in the Treatment).  In the *Bull* Episode, Sadie's father is her legal guardian, not her manager, and he is openly attempting to sell Sadie's business over her objections, not to betray her but to ensure her financial security.

    c.    <u>The Remaining Claimed Similarities Between the Pilot and The *Bull* Episode Are Not Protectable Under Copyright Law.</u>

    i.    <u>Characters</u>

Generalized character types are not protected by copyright law.  *Rice*, 330 F.3d at 1175; *Kouf*, 16 F.3d at 1046.  Only those characters that are "especially distinctive," such as Mickey Mouse and Superman, receive copyright protection.  *Olson*, 855 F.2d at 1452.  By contrast, most literary characters are little more than "the chessmen in the game of telling the story," and are not afforded copyright protection.  *Warner Bros. Pictures, Inc. v. Columbia Broad. Sys., Inc.*, 216 F.2d 945, 949-50 (9th Cir. 1954).

Moreover, "characters which naturally flow from a 'basic plot idea' are 'scenes-a-faire.'"  *Campbell*, 718 F. Supp. 2d at 1115; *see also Cavalier*, 297 F.3d at 825 ("[A] moon character can be considered a stock character for children's literature, and directly flows from the idea of a journey in the night sky."); *Newt*, 2016 WL 4059691, at *5 ("[T]he concept of characters with a troubled past is not protectable.").[25] If characters "have noticeable differences," the fact that they share some similarities does not establish substantial similarity.  *Silas v. Home Box Office*, 201 F. Supp. 3d 1158, 1177 (C.D. Cal. 2016).  None of the characters in the Pilot come close to being sufficiently distinctive to be eligible for copyright protection; and none are even remotely similar to the characters in the *Bull* Episode, in any event.

---

[25]    In general, courts require a very high degree of similarity between characters in order for them to be considered independently copyrightable.  *See Shaw v. Lindheim*, 919 F.2d 1353, 1358 (9th Cir. 1990) (no substantial similarity between characters who were both well educated, wealthy, had expensive tastes, and fought against injustice); *Benay*, 607 F.3d at 626-27 (no substantial similarity between characters who differed in their marital status, job, dreams/nightmares, and ideology); *see also Shame on You Prods., Inc. v. Elizabeth Banks*, 120 F. Supp. 3d 1123, 1165 (C.D. Cal. 2015) *aff'd sub nom. Shame on You Prods., Inc. v. Banks*, No. 15-56372, 2017 WL 1732279 (9th Cir. May 3, 2017) (quoting *Alexander v. Murdoch*, No. 10–5613, 2011 WL 2802899, at *10 (S.D.N.Y. May 27, 2011)) ("'[A] stunningly beautiful, fiery, temperamental, Latina mother, with a thick accent'" is a stock character).

Katten

KattenMuchinRosenman LLP

575 South Flower Street, Suite 1090
Los Angeles, CA 90071-2212
213.788.7400 tel   213.788.7360 fax

In the Pilot, Plaintiff's protagonist is a borderline sociopath who is willing to hurt anyone in order to retain her status as a celebrity influencer. This is the exact opposite of the Sadie portrayed in the *Bull* Episode, who appears to have hurt only one person (a photographer) – inadvertently – years ago when she had her manic episode. Plaintiff's protagonist sometimes is portrayed as a self-conscious and naïve young woman who succumbs to the pressures of living in the highly critical world of social media influencers. By contrast, the protagonist in the *Bull* Episode is smart, sympathetic and kind, and she does not appear to be influenced by the perceptions of others. Plaintiff alleges that both protagonists specialize in the "specific niche of beauty." [Amended Complaint, p. 5.] This over-generalization conceals the strikingly different ways this is expressed: Plaintiff's protagonist is a superficial and materialistic social media influencer who has an interest in fashion, while the protagonist in the *Bull* Episode is a self-made entrepreneur with a successful makeup company that she, like every other modern business owner, promotes through social media.

Although the protagonists in each work have the same first name and a similar last name, names are not copyright protectable. *See Counts v. Meriwether*, No. 14-00396, 2015 WL 9594469, at *12 (C.D. Cal. Dec. 30, 2015) (noting that the name "Spencer" was not copyrightable). Further, in its Order granting Defendant's motion to dismiss Plaintiff's original Complaint, this Court judicially noticed the fact that the last name of the protagonist in the *Bull* Episode (Williams) is the third most common last name according to the U.S. Census Bureau data, and nearly 50 percent of the census respondents with that last name identify as African-American.[26] *See Marcus v. ABC Signature Studios, Inc.*, 279 F. Supp. 3d 1056, 1063, 1069 (C.D. Cal. 2017) (partially relying on U.S. Census data regarding the commonality of the last name "Johnson" and holding that "the fact that characters have identical names and have similar roles in two works does not necessitate a finding of substantial similarity"). This Court also judicially noticed that, by contrast, the last name of the protagonist in

---

[26] *See* RJN, Fact No. 1; Hill Decl., Exh. C [Dkt. #15-1, pp. 73-79].

147513480

the Pilot (Williamson) is the 267th most common last name according to the same Census Bureau data, and only 17 percent of the census respondents with that last name identify as African-American.  [Dkt. #25, p. 4.]

Plaintiff does not allege any similarities between the Pilot and the *Bull* Episode's secondary characters, because there are none.  In fact, this Court already found with respect to the Treatment that "the secondary characters of the works bear no resemblance to each other."  [Dkt #25, p. 9.]  There are no additional secondary characters in the Pilot that are substantially similar to characters in the *Bull* Episode.

ii.   Plot

Like the Treatment, the overall plotline of the Pilot centers on the disappearance of the protagonist's friend, Roxy, and the ensuing police investigation.  There simply is no comparable plotline in the *Bull* Episode.  Rather, this episode focuses on a successful business owner's attempt to end a legal conservatorship in order to regain control over her business and personal life; and even more importantly, it is the story of a daughter and her father and the difficulties with that relationship.[27]

In her Amended Complaint, Plaintiff unsuccessfully attempts explain how the alleged plot similarities are arranged in a particular way and are not just random and general elements.  She states generally that both protagonists share "an almost identical journey with numerous similarities unfolding in a patterned, particular, and arranged way."  [Amended Complaint, p. 6.]  However, a comparison of the two works evidences that the protagonists' respective "journeys" are not even remotely similar and the events that unfold in the two stories follow no common pattern.[28]

---

[27]     *See* Dkt #25, p. 9 ("significant differences between the two works exist . . . the plot of *#SquadGoals* focuses on the social dynamics of a group of friends after the suspicious disappearance of their leader, while the plot of the *Bull* episode focuses on the protagonist attempting to end her father's legal guardianship over her.")

[28]     Plaintiff cites to *Metcalf* for its proposition that if similar elements are "numerous enough and their selection and arrangement original enough that their combination" may be copyrightable.  294 F.3d at 1074.  The sheer number (and accuracy) of the similarities between the two works at issue in *Metcalf* readily distinguishes that case from Plaintiff's claim.

147513480

Katten

Katten Muchin Rosenman LLP
515 South Flower Street, Suite 1000
Los Angeles, CA 90071-2212
213.788.2445 tel   213.788.7360 fax

### iii.   Theme, Dialogue, Mood, Setting and Pace

Even though Plaintiff had a full opportunity to review the *Bull* Episode, review Defendant's arguments in its previous motion to dismiss and use her Amended Complaint to attempt to remedy any deficiencies, she still did not identify any purported similarities in the themes, dialogue, mood, setting or pace of the respective works.  That is because there simply are none.  The Pilot is set principally in a Los Angeles nightclub and police station, while the *Bull* Episode is set in Dr. Bull's New York office and a New York courtroom.  There is no similar dialogue in the two works.  The Pilot includes expletives and references to sexual acts, violence and drugs, none of which are present in the *Bull* Episode.  And, as the Court observed in its prior Order (with respect to the Treatment):  "#*SquadGoals* is akin to a 'whodunit' murder mystery, while the *Bull* Episode is akin to a courtroom procedural."  [Dkt #25, p. 9.]

Plaintiff has now been given a full and fair opportunity to demonstrate that the *Bull* Episode is substantially similar in protected expression to her Works.  She has not done so and cannot do so, because the works at issue are what they are, no matter how Plaintiff attempts to describe them as similar.  It is now time for Plaintiff's copyright claim to be dismissed with prejudice.

## V.   PLAINTIFF'S CLAIM FOR VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTIONS 17200 *ET SEQ.* IS PREEMPTED BY THE COPYRIGHT ACT.

To the extent the Amended Complaint could be construed as alleging a Section 17200 claim, it could be based upon nothing other than the alleged copyright infringement because no other wrongful acts are alleged therein.  As this Court has already concluded, such a Section 17200 claim is preempted by the Copyright Act because it does not satisfy the "extra element" test.  [Dkt. #25, pp. 10-11.]  This claim must now be dismissed with prejudice.

147513480

## VI.   PLAINTIFF'S CLAIM FOR DECLARATORY RELIEF ALSO FAILS.

To the extent the Amended Complaint could be construed as alleging a claim for declaratory relief, it continues to be dependent upon Plaintiff's allegations of copyright infringement. As this Court previously ruled, if the copyright infringement claims fail to state viable claims for relief, the declaratory relief claim fails for the same reasons. [Dkt. #25, p. 11.] If Plaintiff's copyright claim is now dismissed with prejudice, any claim for declaratory relief should suffer the same fate.

## VII.   CONCLUSION

It is well established that when the defects in a complaint cannot be cured by a further amendment, the complaint should be dismissed with prejudice. This is particularly true when a motion to dismiss is based upon a comparison of copyrighted works that are before the court. *See e.g., Campbell*, 718 F. Supp. 2d at 1116 (failure to establish substantial similarity as a matter of law is a "defect [that] cannot be cured by amendment"); *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1123 (9th Cir. 2018) (a motion to dismiss with prejudice is proper where "[n]othing disclosed during discovery could alter the fact that the allegedly infringing works are as a matter of law not substantially similar"), *overruled on other grounds by Skidmore v. Zepplin*, 952 F.3d 1051 (9th Cir. 2020); *Masterson*, 821 F. App'x at 780 (citing string of cases in which the Ninth Circuit has repeatedly over the past decade affirmed the dismissal of cases alleging infringement).

For all of the reasons set forth above, Defendant respectfully requests that the Court dismiss the Amended Complaint with prejudice in its entirety.

Dated: February 3, 2021                    KATTEN MUCHIN ROSENMAN LLP


By: /s/ Shelby A. Palmer
Shelby Palmer
Attorneys for Defendant
ViacomCBS Inc.

Katten
KattenMuchinRosenmanLLP
515 South Flower Street, Suite 1000
Los Angeles, CA 90071-2212
213.788.7402 tel   213.788.7367 fax