Candesha Washington
candywashington@gmail.com
9663 Santa Monica Blvd.
Suite 582
Beverly Hills, CA 90210
Telephone: 646.264.8729

*Pro se* Candesha Washington

FILED
CLERK, U.S. DISTRICT COURT
FEB 17 2021
CENTRAL DISTRICT OF CALIFORNIA
BY ___ DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| CANDESHA WASHINGTON,<br><br>   Plaintiff,<br><br>   vs.<br><br>VIACOMCBS, INC.; AND DOES 1 THROUGH 50,<br><br>   Defendants. | Case No. 2.20-cv-00435<br><br>**PLAINTIFF'S RESPONSE TO THE MOTION TO DISMISS THE AMENDED COMPLAINT**<br><br>[Hon. Consuelo B. Marshall]<br><br>Date: March 9, 2021<br>Time: 10:00am<br>Place: Room 8B |

Dated this 15th day of February, 2021

_____

**RESPONSE TO DEFENDANTS' MOTION TO DISMISS**

Candesha Washington, ("Plaintiff"), respectfully opposes ViacomCBS's ("Defendant"), motion to dismiss. Therefore, on March 9, 2021, at 10:00 a.m., or as soon thereafter as the parties may be heard before Honorable Consuelo B. Marshall, United States District Judge, in Courtroom 8B of the above-entitled court, located at 350 W. First Street, Los Angeles, California 90012, the Plaintiff will and hereby oppose the dismissal of the Amended Complaint filed by the Defendant pursuant to the attached Motion and Declaration of Support to oppose the dismissal of the Amended Complaint.

**FACTS**

The Defendant's motion to dismiss fails to disprove the facts of the amended complaint which alleges that the Defendant had at least four reasonable means of access to the Plaintiff's *#SquadGoals* screenplay and treatment, and although the Defendant provides a summary of the screenplay, treatment, and *Bull* episode, the Defendant's summaries are based on their own opinions which does not negate the fact that there are substantial similarities expressed in similar and particular ways that logically supports the reasonable assertion that the story arc of the *Bull* episode was derived from the Plaintiff's *#SquadGoals* screenplay and treatment, both of which are protected under the Plaintiff's copyright as she is the sole and original copyright holder.

The fact remains that the Plaintiff's screenplay and treatment was reasonably accessible to the Defendant through her submission to the Imagine Impact writing competition that states that the submitted materials will be accessible to Imagine Impact's network of executives, directors, producers, and writers within the entertainment industry.

Given the documented professional relationship of developing similar bodies of work such as films and television series between the intermediary (Imagine Impact) and the Defendant, it is a reasonable assertion that the Defendant would be included in

the intermediary's network of executives, directors, producers, and writers within the entertainment industry.

The Defendant fails to address that the intermediary was a writing competition that stated that it would share the writing submissions with its network of entertainment executives, writers, producers, and directors, a network within which the Defendant has been proven to be a part of.

The Defendant provides Dan Lerner's entire resume and *Friday Night Lights* IMDb credits, all which are irrelevant to this amended complaint. The only relevant point is that Dan Lerner is the credited director of the exact *Bull* episode in question and that he has a pre-existing relationship with the intermediary regarding a similar body of work, and therefore, could plausibly have had access to the screenplay and treatment through the intermediary as a part of their network of executives, directors, producers, and writers within the entertainment industry that would be reviewing the writing competition that the Plaintiff submitted her screenplay and treatment to, as well as the intermediary's First Look Deal with the Defendant.

The Defendant provides Paul Attanasio's biography, which is also irrelevant to the amended complaint, as the fact remains that Mr. Attanasio is the co-creator of *Bull,* and has a documented and pre-exisiting relationship with the intermediary regarding a similar body of work, and therefore, could plausibly have had access to the screenplay and treatment through the intermediary as a part of their network of executives, directors, producers, and writers within the entertainment industry that would be reviewing the writing competition that the Plaintiff submitted her screenplay and treatment to, as well as the intermediary's First Look Deal with the Defendant.

The fact remains that the Plaintiff emailed two CBS producers, Shima Azarafza and Olivia Hass, her screenplay and treatment, at their company email addresses, and therefore, the digital files of the screenplay and treatment were accessible on the Defendant's email server which made them accessible to other CBS employees. Therefore, rendering the Defendant's point that Ms. Azarafza and Ms. Hass weren't producers on

*Bull* moot. Printed copies of the emails are included in the Declaration of Support.

It is also reasonable to assert that producers and employees share screenplays, treatments, and relevant bodies of work with each other, and therefore, it could have reasonably been shared between various producers, writers, and directors within CBS.

These facts create the necessary nexus needed to satisfy, "in order to sufficiently allege such a nexus, the Plaintiff must allege that he/she submitted his/her work to an intermediary who either: "(1) has supervisory responsibility for the allegedly infringing project, (2) contributed ideas and materials to it, or (3) worked in the same unit as the creators."

The intermediary, Imagine Impact writing competition, had supervisory responsibility for the allegedly infringed upon project. The intermediary stated that it would share the project within its network of entertainment executives, producers, directors, and writers, during the reviewing process of the writing competition.

There's an established history of the intermediary working with the Defendant on similar bodies of work, and therefore, it's a reasonable assertion that the Defendant would be included within the network that had accessibility to the screenplay and treatment as it was submitted to the Imagine Impact writing competition.

Therefore, regardless of the intermediary and the Defendant's First Look Deal, the Defendant could reasonably had access to the screenplay and treatment via the writing competition.

The fact remains that the Defendant fails to provide any logical explanation for why the protagonist of the *Bull* episode is publicly cited as "Sadie Washington" which is almost identical to the Plaintiff's real name, "Candy Washington." IMDb print-out is included in the Declaration of Support.

The fact remains that it's a logical, reasonable, and plausible assertion that the allegations made in the amended complaint goes beyond a mere coincidence and speculation given that the protagonist's name, "Sadie Williams" is almost identical to

the Plaintiff's protagonist, "Sadie Williamson," and that the Defendant referred to the protagonist as "Sadie Washington" which is almost identical to the Plaintiff's real name, "Candy Washington," on their official IMDb page, and that the Defendant had at least four reasonable points of access to the Plaintiff's screenplay and treatment along with similarly expressed plot points, character development, and story arcs.

The fact remains that the Plaintiff had a meeting with her mentor, Rich Battista, who is the former President of Imagine Entertainment, where the Plaintiff alleges that he gave a tacit admission of guilt regarding the plausibility the intermediary shared similar bodies of work with the Defendant, which could have included the Plaintiff's screenplay and treatment as part of her submission to Imagine Impact's writing competition. The Defendant fails to address this issue in their motion to dismiss.

The Defendant also provides an introduction and procedural history of the complaint and the actions of the Plaintiff's previous legal representation, both of which are irrelevant as they do not disprove the facts that support the Plaintiff's allegations of copyright infringement under 17 U.S.C. § § 101, *et seq.*, derivative copyright infringement under *17 U.S.C. § § 106, et seq.*, violation of California Business & Professions Code § § 17200, *et seq.*, and owed declaratory relief under 17 U.S.C. § § 101, *et seq.,* as alleged in the Plaintiff's amended complaint.

**ARGUMENT**

**I. JURISDICTION AND VENUE**

The Defendant's claim to dismiss pursuant to Rule 12(b)(1) is baseless and unsubstantiated as the United States District Court, Central District of California, Western Division has the authority and jurisdiction over the subject-matter as outlined and alleged in the Plaintiff's amended complaint.

This action arises under the Copyright Act of 1976, 17 U.S.C. § § et. seq., conferring Federal question jurisdiction under 28 U.S.C. § 1331, and supplemental jurisdiction on Plaintiff's state law claims under 28 U.S.C. § 1367.

Venue is proper in this District pursuant to 28 U.S.C § §1391(b)(2) as: (a) a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District; (b) Defendants conduct business in this District; (c) the unlawful acts of Defendants, complained of in the amended complaint, have been committed within and/or have had or will have had an effect in this District; and (f) Plaintiff who resides in and conducts her business in this District, has been and will continue to be damaged by the unlawful acts of Defendant's.

## II. THE COMPLAINT STATES A CLAIM FOR RELIEF UNDER COPYRIGHT INFRINGEMENT (17 U.S.C. § § 101, et seq.) AND UNDER DERIVATIVE COPYRIGHT INFRINGEMENT (17 U.S.C. § § 106, et seq.) AGAINGST ALL DEFENDANTS

The Defendant's claim to dismiss pursuant to Rule 12(b)(6) is baseless and unsubstantiated. At all times relevant hereto, the Plaintiff has been the sole owner of all copyright rights or rights to assert copyright claims for the copyright of the *#SquadGoals* screenplay and its treatment and all derivative works. The Plaintiff has complied in all respects with the Copyright Act of 1976, 17 U.S.C. *§ § 101, et seq.*, and all other laws governing copyright.

As a general matter, copyright infringement occurs when a copyrighted work is reproduced, distributed, performed, publicly displayed, or made into a derivative work without the permission of the copyright owner.

The Plaintiff's amended complaint satisfies this burden, as it alleges at least four reasonable and plausible ways that the Defendant had access to the Plaintiff's *#SquadGoals* screenplay and treatment and it details the substantial and particular similarities between the script, treatment, and the *Bull* episode, all which supports the reasonable assertion that the *Bull* episode was derived from the *#SquadGoals* screenplay and treatment. The *Bull* episode was publicly displayed and distributed by the Defendant via television and digital platforms on October 14th, 2019 and thereafter, without the permission of the original copyright owner which is the Plaintiff.

The Plaintiff is informed and believes and thereon alleges that the Defendant, without authorization, have infringed and will continue to infringe upon the exclusive copyright of the Plaintiff as described within the amended complaint regarding the using, advertising, promoting, marketing, airing, licensing, streaming, and selling, or otherwise exploiting the *Bull* episode, *Her Own Two Feet*, without the license or authorization or any right to do so.

By means of the actions alleged in the amended complaint, the Defendants, and each of them, have infringed, and will continue to infringe upon the copyright of the Plaintiff. Therefore, the Plaintiff is entitled to an injunction restraining the Defendants, and each of them, and all persons acting in concert with them, from engaging in further such acts in violation of copyright laws.

As a direct result of the Defendants' infringement, the Plaintiff has sustained damages and will continue to sustain damages in an amount to be determined at trial.

Therefore, pursuant to copyright infringement under 17 U.S.C. § § 101, *et seq.*, 17 U.S.C. § § 502, 503, 504, and 505, and derivative copyright infringement under *17 U.S.C. § § 106, et seq.*, the Plaintiff is entitled to an award of actual or statutory damages, injunction relief, the impoundment and destruction of the infringing materials, and damages for pain and suffering.

**III. THE COMPLAINT STATES A CLAIM FOR RELIEF UNDER THE VIOLATION OF BUSINESS & PROFESSIONS CODE (§ § 17200, et seq.) AGAINST ALL DEFENDANTS**

The Defendant's claim to dismiss pursuant to Rule 12(b)(6) is baseless and unsubstantiated. The Defendant has committed all of the unlawful acts as alleged in the amended complaint without regard to the Plaintiff's exclusive rights to the *#SquadGoals* screenplay and treatment.

Therefore, regarding California Business & Professions Code § § 17200, which states, unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division

7 of the Business and Professions Code, the amended complaint alleges that the Defendant infringed upon the Plaintiff's copyright by deriving the *Bull* episode from her *#SquadGoals* screenplay and treatment, and therefore, the Defendant's unlawful actions against the rights of the Plaintiff are inherently unlawful, unfair, fraudulent, deceptive, untrue, and misleading.

Therefore, pursuant to California Business and Professions Code §§ 17200 and 17203, the Plaintiff seeks an order from this Court prohibiting the Defendant from engaging or continuing to engage in the unlawful, unfair, or fraudulent business acts or practices set forth in the amended complaint.

The Plaintiff also requests an order from this Court requiring that the Defendant disgorge profits and return or pay to the Plaintiff all of the Defendant's profits from the unlawful conduct described in the amended complaint and/or pay restitution to the Plaintiff of all sums received by the Defendant for the use of the Plaintiff's copyrighted work or otherwise related to the *Bull* episode, *Her Own Two Feet*.

Additionally, the Plaintiff is seeking restitution for any screenwriting and producing fees, payments, and accreditation in association with the production, writing, and distribution of the *Bull* episode, *Her Own Two Feet*.

### IV. THE COMPLAINT STATES A CLAIM FOR RELIEF UNDER DECLARATORY RELIEF

The Defendant's claim to dismiss pursuant to Rule 12(b)(6) is baseless and unsubstantiated. The Plaintiff allegations in the amended complaint creates an actual controversy that has arisen and now exists between the Plaintiff and the Defendants with regard to the Defendants using, airing, licensing, streaming, selling, and advertising the *Bull* episode, *Her Own Two Feet*, as the Plaintiff contends such actions by the Defendants infringes upon her exclusive *#SquadGoals* screenplay and treatment copyright.

Therefore, a judicial determination of these issues and of the respective rights of the Plaintiff and the Defendants is necessary and appropriate at this time

under the circumstances because the Defendants continue to use, exploit, market, and profit from the *Bull* episode, *Her Own Two Feet*, thereby diminishing or extinguishing the Plaintiff's rights and ability to commercially use her copyrighted work.

**WHEREFORE** Plaintiff prays as follows:

 a. That the Defendants, their agent, servants, employees, predecessors, successors, parents, and affiliates be enjoined from airing, selling, licensing, marketing, displaying, promoting, showing, and developing the *Bull* episode, *Her Own Two Feet*, or making any use of the Plaintiff's copyrighted work, *#SquadGoals* screenplay and treatment, underneath the Registration Number Pau 3-985-289;

 b. That the Plaintiff be awarded all profits of the Defendants, plus all losses of the Plaintiff, to the exact sum to be proven at the time of the trial, or, if elected before final judgment, statutory damages as available under the Copyright Act, 17 U.S.C. §101, et. Seq.;

 c. For an Order that the Defendants have no rights in the copyrighted works of the *#SquadGoals* screenplay and treatment, and may not continue any further use, development, promotion, marketing, sale, licensing, streaming, or any other commercial use of the *Bull* episode, *Her Own Two Feet*, or any other material or body of work derived from the *#SquadGoals* screenplay and treatment.

 d. That the Plaintiff be awarded her attorney fees as available under the Copyright Act 17 U.S.C. §101, et. seq.

 e. Directing such other relief as the Court may deem appropriate to prevent the Defendants from participating in other copyright infringements or unfair use of the Plaintiff's protected work, and; such other relief as the Court may deem appropriate.

## V. THE DEFENDANT'S DOCUMENTED HISTORY OF RACE AND GENDER DISCRIMINATION

Since within the Defendant's motion to dismiss opened the door to the importance of the accredited writer of the *Bull* episode, it should be noted that the

Defendant has a documented history of race and gender discrimination, in addition to a toxic workplace culture of racism and sexism.

According to the Defendant's IMDb page for the *Bull* episode, the accredited writer is Sarah H. Haught, who is a Caucasian, female, and is an established writer. The Plaintiff is an African-American, female, and is an emerging writer.

Although the Plaintiff does not suffer from a mental illness, she is an African-American, female, beauty and fashion social media influencer and the protagonist "Sadie Williams/Williamson," is loosely based on her own moral dilemma of feeling the pressure to conform to conventional beauty standards.

The Defendant gave an African-American female writer's story to a Caucasian writer to take the credit for and profit from without the permission of the original copyright holder who is African-American, which is in alignment with documented toxic, racist, and sexist company culture of the Defendant, ViacomCBS.

The Defendant has a documented history of crediting their Caucasian employees for the work performed by their minority counterparts and not supporting minorities professional and economic growth.

Therefore, it's a reasonable assertion, given the Defendant's documented history of racism and sexism, that one of the four plausible ways that the Defendant had access to the Plaintiff's screenplay and treatment would have provided them to Sarah H. Haughton, who is Caucasian, to claim the derived work as her own, since the original copyright holder was African-American and female.

According to the *Deadline* article entitled, *CBS Hit With $1M Discrimination & Retaliation Suit By Former Finance Executive*, "The essence of Ms. Solache's claim is that Defendant treated her differently from other employees, underpaid her because of her national origin, failed to give her a title or salary commensurate with her position and responsibilities, and, when Ms. Solache questioned the manner in which she was being treated, Defendants retaliated against her by manufacturing a pretext for its termination of Ms. Solache's employment," The full *Deadline* article is

available in the Declaration of Support.

According to an article in *Variety*, entitled, *CBS Has a White Problem': Executive Blasts Toxic Culture at Network in Explosive Letter*, and written by former CBS executive Whitney Davis, "While CBS proudly touts its diversity programs, a close look beneath the surface reveals that the company is unconcerned about creating space for minorities... Today, the only black female executive at CBS Entertainment oversees diversity and inclusion. During rotations, a common theme was that talent of color and creatives from marginalized communities weren't good enough for CBS." The full *Variety* article is available in the Declaration of Support.

According to an article in the *L.A. Times*, entitled, *Inside CBS' fraught investigation into allegations of racism and misogyny,* "Cronan and the others alleged that CBS Television Stations President Peter Dunn and a top lieutenant cultivated a hostile work environment that included bullying female managers and blocking efforts to hire and retain Black journalists." The full *L.A. Times* article is available in the Declaration of Support.

According to an article in *The Wrap*, entitled, *CBS Radio Slapped With Racial Discrimination Lawsuit by Ex-Employee Who Says She Was Called a 'B\*tch,'* "CBS has been hit with a lawsuit filed by a former employee who claims that she suffered "racial discrimination, gender discrimination, retaliation and a hostile work environment." The full article is available in the Declaration of Support.

According to an article in the *Daily News*, entitled, *CBS sued by top reality exec for alleged race and age discrimination*, "A high-ranking CBS executive who developed "Survivor" and "BH90210" is suing the network for alleged discrimination based on his race and age. Ghen Maynard, 53, claims he's being pushed out of his position as senior executive vice president of alternative programming by "CBS' top circle" of "all white males." The full article is available in the Declaration of Support.

Therefore, and in conclusion, it goes beyond reason, logic, speculation, and plausibility that Sarah H. Haught, or any accredited writers of the *Bull* episode, independently of having access to the Plaintiff's screenplay and treatment created a protagonist that shares an almost identical name and story arc that mirrors the Plaintiff's real name and real life experiences, particularly being an actual African-American, female, beauty and fashion social media influencer, who has previously and publicly documented her experience of feeling the pressure to conform to societal beauty standards.

Dated: February 15th, 2021         By: _____
                                   Candesha Washington
                                   Pro se Candesha Washington

C. WASHINGTON
9163 SANTA MONICA BLVD.
SUITE 582
BEVERLY HILLS, CA 90210

Ms. YOLANDA SKIPPER
COURTROOM DEPUTY TO
TERRY J. HATTER JR. +
CONSUELO B. MARSHALL
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
350 WEST 1st STREET
SUITE 4311, ROOM 4176
LOS ANGELES, CA 90012-4565



CLERK U.S. DISTRICT COURT
FEB 1 2021
CENTRAL DISTRICT OF CALIFORNIA