1  Candesha Washington
2  9663 Santa Monica Blvd., Suite 582
3  Beverly Hills, CA 90210
4  candywashington@gmail.com
5  646.264.8729
6  *Plaintiff in Pro Se*

7

8

9              **UNITED STATES DISTRICT COURT**
10            **CENTRAL DISTRICT OF CALIFORNIA**
11                 **WESTERN DIVISION**
12

13  CANDESHA WASHINGTON,            Case No.: 2:20-cv-00435
14            Plaintiff,           **OPPOSITION TO DEFENDANT –**
15       vs.                       **VIACOMCBS, INC.; AND DOES 1**
16  VIACOMCBS, INC.; AND DOES 1     **THROUGH 50 MOTION FOR**
17  THROUGH 50,                     **ATTORNEY'S FEES**
18            Defendant.
19                                  Hearing: July 20, 2021
20                                  Time:  10:00am
21                                  Judge: Hon. Consuelo B. Marshall
22                                  Court: Room 8B
23

24

25

26

27

28

1

# TABLE OF CONTENTS

I. INTRODUCTION.................................................................. 4

II. ARGUMENT.................................................................... 7

    A. The Defendant Failed to Comply with Local Rule 7-3 ...................... 7

    B. ViacomCBS Is Not Entitled To Fees Because Its Fees Were Not
Reasonably Incurred ............................................................. 9

    C. ViacomCBS Provides No Credible Evidence of Bad Faith by the
Plaintiff ...................................................................... 10

    D. Ninth Circuit Precedents Preclude a Fee Award Against a Plaintiff
Unless the Lawsuit Was Frivolous ............................................. 17

    E. The Defendant Unethically and Illegally Provided False Evidence In
Their Motion via The Defendant's Exhibit 3 .................................. 19

III. Conclusion ............................................................... 22

# TABLE OF AUTHORITIES

**CASES**

*Shame on You*, 2016 WL 5929245, at *9 …………………………….. 10

*Marbled Murrelet v. Babbitt,* 182 F.3d 1091, 1095 (9th Cir. 1999) …………... 16

*Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n*, 434 U.S. 412 (1978) ("Christiansburg") ……………………………….. 16

*Hughes v. Rowe*, 449 U.S. 5, 14 (1980) …………………………………….. 16

*National Mass Media Telecomm. Sys. v. Stanley* (In re National Mass Media Telecomm. Sys.), 152 F.3d 1178, 1181 (9th Cir. 1998) …………………….. 17

*Penguin Random House LLC, et al. v. Frederik Colting and Melissa Medina,* d/b/a Moppet Books No. 17-cv-386 (S.D.N.Y. Sept. 8, 2017) …………….. 18, 19

**STATUTES**

Federal Rule of Civil Procedure 54(d) ……………………………….. 4, 16

17 U.S.C. Section 505 ………………………………………….. 4, 9, 16

Copyright Act ……………………………………………………….. 6,7

**CODES**

California Penal Code 134 PC ………………………………………... 19

3

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I. INTRODUCTION

3        In its Motion for Attorney's Fees ("Motion"), ViacomCBS Inc., Does 1

4  through 50 ("Defendant") seek attorney's fees against Candesha Washington

5  ("Plaintiff"), however, in the Motion, the Defendant provides intentional and

6  unethical false, inaccurate, defamatory, and misleading claims in an effort to

7  purposely intimidate and coerce the Plaintiff into forfeiting her legal rights to

8  appeal and to intentionally mislead the Court. Moreover, it fails to prove that their

9  inflated amount of $234,718.75 in attorney's fees is a reasonable request pursuant

10 to Federal Rule of Civil Procedure 54(d) and 17 U.S.C. Section 505.

11       On June 7th, 2021, June 8th, 2021 and on June 11th, 2021, the Defendant was

12 made aware that the Plaintiff intended to appeal the Court's dismissal with

13 prejudice that occurred on May 21, 2021, based on three pillars. The first pillar was

14 the Plaintiff's unwavering moral conviction and good faith that the Defendant had

15 access to her screenplay and treatment, and derived the *Bull* episode from her

16 copyrighted works.

17       The second pillar was that the Plaintiff was unable to receive legal due

18 process given how her previous attorney mishandled her case. Her previous

19 attorney provided her with misinformation and blocked her from being able to

20 secure new legal representation in a timely manner and the Plaintiff was forced to

21 represent herself regarding the amended complaint. It was not the desire of the

22 Plaintiff to represent herself and on good faith she believes that based on the merits

23 of her case, the amended complaint would not have been dismissed if she had a

24 competent lawyer to represent her.

25       The third pillar was the public announcement that in tandem with the filing

26 of Plaintiff's lawsuit, ViacomCBS was conducting an internal investigation into

27 *Bull.* The result of that investigation was the firing of the show's showrunner due to

28 misconduct and unethical practices when it came to generating episode storylines

4

and bodies of work for *Bull,* as published in *The Hollywood Reporter* **(Exhibit A),** and whose story was subsequently picked up by *Deadline[1]*, *TV Line[2]*, *Entertainment Weekly[3]*, and other reputable entertainment industry media outlets.

The Plaintiff does not believe that the filing of her lawsuit, the timing of the internal investigation into *Bull,* and the subsequent firings were a coincidence. The Plaintiff, in good faith, believes that if her case had the chance to go into discovery based on the circumstantial evidence that was provided, the exact nexus between the *Bull* writers and access to her screenplay and treatment would have been uncovered, based on the findings from their internal investigation.

The Defendant's claim that the Plaintiff's claims "were objectively unreasonable, if not frivolous," is false and absurd. There were multiple unique similarities and circumstantial points of access regarding the Plaintiff's screenplay and treatment and the Defendant and the *Bull* episode. In fact, this is why the Court allowed for the original complaint to be amended, and if the Plaintiff had been allowed legal due process and not hindered by her previous attorney, the amended complaint would have satisfied the legal threshold to prove that she had a plausible copyright infringement case against the Defendant.

The Defendant's claim that the Plaintiff's "conduct demonstrated bad faith," isn't only intentionally false and misleading but it's also defamatory. The Plaintiff's belief in the merits of her infringement case has never ceased. The Plaintiff clearly communicated her conviction to the Defendant, which is why the Defendant is using the threat of recouping legal fees as a way to silence the Plaintiff, per **Exhibit B.** The Defendant's attorney, Ms. Hill, told the Plaintiff during a Zoom conference on June 11th, 2021, that "We just want to make you stop," which the Plaintiff took as a threat.

---

1  https://deadline.com/2021/05/glenn-gordon-caron-out-bull-showrunner-deal-with-cbs-studios-ends-1234762232/

2  https://tvline.com/2021/05/21/bull-freddy-rodriguez-leaving-glenn-gordon-caron-fired-cbs/

3  https://ew.com/tv/bull-drops-showrunner-freddy-rodriguez/

1    The Defendant's claim that "a fee award would deter similar plaintiffs from

2    filing meritless lawsuits," is again absurd since the Plaintiff's lawsuit wasn't

3    meritless, it just wasn't presented by a competent lawyer. This statement is also in

4    alignment with the Plaintiff's claim the Defendant is using the threat of recouping

5    attorney fees as an intimidation tactic as the Plaintiff told the Defendant of other

6    writers that have come forward regarding having had their work stolen. However,

7    the Plaintiff never claimed that those writers were making claims that it was

8    ViacomCBS who stole their work, so it's unclear as to how this point is relevant to

9    this individual and particular infringement case.

10    Additionally, on May 21, 2021, it was ViacomCBS who publicly announced

11    the outcome of their internal investigation into *Bull,* **(Exhibit A)**. Any residual fall-

12    out or copyright claims is a direct result of their own public actions. The Plaintiff

13    has **not** publicly discussed her infringement case, and therefore, it is a false and

14    misleading claim that awarding a fee award against the Plaintiff would deter other

15    copyright claims, since it was the Defendant's own public actions that could call

16    into question their ethical and legal practices of creating episodes storylines, TV

17    scripts, treatments, etc. The Plaintiff should not be punished with an inflated fee

18    award based on the public actions of the Defendant.

19    Additionally, during the Zoom conference call, the Plaintiff made it clear to

20    the Defendant that she has ***no intention*** of starting a Class Action Lawsuit. The

21    Plaintiff's sole priority is her personal infringement case against the Defendant and

22    she has not spoken publicly regarding this individual infringement case, but that

23    she would exercise her legal right to appeal if they were unable to come on

24    amicable compromise.

25    This also substantiates the claim that the Defendant is inflating their attorney

26    fees to an unreasonable amount as way to intimidate the Plaintiff into not pursuing

27    her available options regarding this lawsuit per **Exhibit B**.

28    The Defendant's claim that "a fee award would further the Copyright Act's

goals of protecting creative speech," is an irrelevant point. The Copyright Act was passed to protect intellectual property. If the Defendant's claims are true and they did not infringe upon the Plaintiff's exclusive copyrights, then the Copyright Act shouldn't be an issue. The fact that the Defendant is making this point calls into question the veracity of their claims. The purpose of the Copyright Act is to protect creative speech, not to provide a legal loophole for entities to derive and steal the work of underrepresented creative professionals and content creators.

## II. ARGUMENT

### A. The Defendant Failed to Comply with Local Rule 7-3

The Defendant claimed, "This Motion is made following the conferences of the parties pursuant to Local Rule 7-3, which took place on June 10, 2021 and June 11, 2021." This is an intentionally false and misleading statement, per **Exhibit C.**

Since the Plaintiff was represented Pro Se, she enlisted the assistance of the California Lawyers for the Arts to mediate a meet-and-confer regarding any next steps of her case given the dismissal.

On June 7th, 2021, as requested by the Plaintiff an impartial representative from the Arts Arbitration and Mediation Services (AAMS) at California Lawyers for the Arts reached out to the Defendant to set-up a mediation/meet-and-confer. The Defendant **declined** to meet, per **Exhibit C** and **Exhibit D.**

The impartial representative reached out for a second time on that same day to confirm that they were still unwilling to meet and provided three incentives for agreeing to meet-and-confer, per **Exhibit D.** The Defendant **never responded** to the impartial representative's second request to meet-and-confer.

On June 8th, 2021, the Defendant's legal team emailed the Plaintiff to schedule a meet-and-confer regarding recouping legal fees. At that point, since the Defendant had already **declined to mediate and meet-and-confer twice**, the Plaintiff asked if she could have her new legal representation present for the

7

1   meeting once she had one confirmed, since it was evident that the Defendant was

2   using the threat of recouping legal fees in retaliation to the Plaintiff's option to

3   appeal, per **Exhibit E.**

4          On June 8th, 2021, the Defendant agreed to wait to meet-and-confer until the

5   Plaintiff's new legal representation could meet as well, per **Exhibit C.**

6          On June 9th, 2021, the Defendant emailed the impartial representative from

7   California Lawyers for the Arts with an offer to not move forward with the Motion

8   to recoup attorney fees in exchange for the Plaintiff's waiving her legal rights to

9   appeal. The Plaintiff viewed this as a threat and retailaition for requesting

10  mediation, as recouping nearly $240,000 in legal fees is absurd given the scope and

11  brevity of work conducted during this case,  per **Exhibits B and E.**

12         This is a clear indication that the Defendant is using the unreasonable

13  amount of attorney legal fees as a way to intimidate the Plaintiff into forfeiting her

14  legal rights to appeal.

15         Also, on June 9th, 2021, less than 24 hours from the Local Rule 7-3 deadline

16  to meet-and-confer, the Defendant emailed the Plaintiff to go back on their

17  agreement and asked for a meet-and-confer once they realized that they were going

18  to miss their deadline – the Defendant never pleaded for a formal extension of the

19  Local Rule 7-3 deadline.

20         On June 10th, 2021, the Plaintiff communicated to the Defendant that she

21  was working closely with the California Lawyers of the Arts to secure a new

22  lawyer, and that the impartial representation would be reaching out to schedule a

23  mediation/meet-and-confer, given that it was less than 24 hours until the deadline,

24  per **Exhibit C.**

25         The Defendant again declined for the third time to **mediate/meet-and-**

26  **confer** when the impartial representative reached out to set-up a time for a

27  conference call or Zoom meeting, on June 10th, 2021.

28         On June 10th, 2021, the Defendant emailed the Plaintiff their rationale for

filing the motion for attorney fees, and on June 11th, 2021, the Plaintiff responded that she did not comply with the email as being a substitute for a meet-and-confer and that it should not be misconstrued that the Zoom conference on June 11th, 2021 was to be taken as an approval for a deadline extension, per **Exhibit C**, and again, the Defendant never formally asked for an extension.

It should be noted that the Defendant's legal team and the Plaintiff (Pro Se), **have never had any communication outside of email during this entire legal process**, since January 2020 – June 2021.

The only time that the Defendant's legal team and the Plaintiff (Pro Se) have met and conferred has been on June 11th, 2021, which was after the Local Rule 7-3 deadline had passed, per **Exhibit C**.

### B. ViacomCBS Is Not Entitled To Fees Because Its Fees Were Not Reasonably Incurred

The Copyright Act authorizes a district court to "award a reasonable attorney's fee to the prevailing party as part of the[ir] costs." 17 U.S.C. § 505. The proposed legal fees of $234,718.75 is absurd and unreasonable given that: (1) the infringement case was only one round of replying to the original complaint, and one round of replying to the amended complaint, (2) there were no in-person meetings between legal teams, (3) there were no virtual meetings between legal teams as the Plaintiff Pro Se, except for one half hour on June 11th, 2021, (4) there were no phone calls between legal teams as the Plaintiff Pro Se, (5) within their replies, the Defendant repeatedly claimed that their response to the original case was the same as their response to the amended complaint, in fact, in their Motion the Defendant directly stated, "Plaintiff filed an amended complaint alleging essentially all of the same claims," therefore, logic would dictate that they did not perform any additional work or research regarding their reply to the amended complaint, (6) from January/February 2021 to May/June 2021, there was no

9

contact between the Defendant and the Plaintiff Pro Se or any substantial ongoing issues regarding this case, (7) from January 2020 to September 2020, there was little to no contact between the Defendant and the Plaintiff Pro Se and with the Plaintiff's previous attorney, or any substantial ongoing issues regarding this case, and (8) there were only three lawyers assigned to this case, David Halberstadter, Shelby Palmer, and Joanna Hill, however, during a substantial amount of time during this case, Ms. Hill was on maternity leave per **Exhibit F**, and therefore, should not have been able to bill hours toward this case during that time.

Therefore, even if their alleged hourly rates are at market standard, it's unclear exactly how the Defendant's legal team was able to reasonably, legally, and ethically bill $234,718.75 worth of hours regarding this case.

Additionally, per the previous statements and evidence, it is clear that the Defendant is inflating the amount of their legal fees as an intimidation tactic to get the Plaintiff to waive her legal right to appeal, per **Exhibits B and E.**

### C. ViacomCBS Provides No Credible Evidence of Bad Faith by the Plaintiff

The Defendant has provided intentionally false, inaccurate, and defamatory claims in their Motion for attorney's fees. The Defendant referred to, "A finding of bad faith may be based on Plaintiff's conduct that "suggests an intent to force Defendant[] to expend significant resources on litigation in order to coerce a settlement." *Shame on You*, 2016 WL 5929245, at *9.

This is a false and defamatory claim. Per **Exhibits C and D**, it was the Plaintiff that initiated mediation in order to resolve and deescalate the lawsuit. The Defendant clearly had no respect for the Plaintiff being self-represented as they declined multiple offers for mediation and failed to meet-and-confer with the Plaintiff throughout this entire legal process until June 11th, 2021.

It was the Plaintiff's position to find an amicable resolution that would end the ligation. In fact, during the Zoom conference, Ms. Hill's response to the

1   Plaintiff's efforts to find a resolution was, "I guess we'll have to fight it out in the
2   Ninth Circuit."
3        Additionally, during the Zoom conference which occurred after the Local
4   Rule 7-3 deadline, it was Ms. Hill who initially asked, "So you want a pay-out?"
5   The Plaintiff did not initiate a conversation around a monetary settlement. The
6   Plaintiff's response to Ms. Hill's question regarding a payout was, "I guess
7   whatever would be fair. Whatever a writer would get."
8        To further the point that the Plaintiff was acting in good faith, on June 8th,
9   2021 the Plaintiff's application to enroll in the California Lawyers of the Arts
10  program to match clients with legal representation was approved, per **Exhibit G.**
11  The process of matching clients and lawyers takes time and the Plaintiff requested
12  guidance on how to expedite the process. The Plaintiff is actively seeking new
13  legal representation, which directly contradicts the Defendant's claims that the
14  Plaintiff is operating out of bad faith.
15       The Defendant claims, "Plaintiff's prior counsel in this action had ample
16  entertainment litigation experience, and he therefore either knew or should have
17  known that Plaintiff's infringement claim was without merit and directly contrary
18  to existing case law. (Defendant's counsel also repeatedly told Plaintiff's prior
19  counsel that Plaintiff's claims were meritless.)," this statement is irrelevant since
20  the Plaintiff asked her previous counsel to withdraw due to the documented ways
21  that he mishandled her case, not based upon his legal experience nor was it based
22  upon the merits of this case, particularly because the Court granted the Plaintiff the
23  legal right to file an amended complaint.
24       Additionally, since it would be in the Defendant's legal team best interest to
25  tell the Plaintiff's legal counsel that her claims were "meritless," the above claim is
26  irrelevant. It would be absurd for the Defendant's legal counsel to encourage the
27  opposing party to continue to sue their client.
28       The Defendant also claims, "Then, after Plaintiff fired her attorney –

ostensibly because of her decision to move forward with her claims after her initial complaint was dismissed," this is also a false claim. The Plaintiff directly told the Defendant's counsel during the Zoom conference, that she asked her previous legal representation to withdraw based solely on the way in which he mishandled her case, and how he subsequently blocked her from being able to secure an adequate attorney, and not, based on the merits of the case.

Additionally, the Plaintiff was simply exercising her legal right to submit an amended complaint per the judgment of the Court to dismiss the original complaint without prejudice. It's unclear how following the direction of the Court is acting in bad faith.

Therefore, regardless if the Plaintiff was moving forward with her complaint or not, the sole reason for the previous counsel's withdrawal was due to how he mishandled her original complaint. An example of this is when the Plaintiff's previous counsel submitted her private documentation as part of the complaint's declaration, rather than arguing the points of her private documentation in a competent way within the actual complaint itself.

Another example of this is how the the Plaintiff's previous attorney failed to clearly state in the original complaint that the Plaintiff owned the copyrights to both her screenplay and the treatment, both of which were submitted to the Imagine Impact writing competition, and therefore, was alleging that the Defendant had reasonable access to both the screenplay and the treatment, per the writing competition. The Plaintiff's previous attorney, also provided her with misinformation regarding her case which hindered her access to legal due process regarding the submission of the amended complaint.

The Defendant also claims, "Since the dismissal with prejudice of her action, Plaintiff has made it evident that her motive in continuing to pursue these claims is to obtain a payout in spite of the Court's two separate rulings dismissing her claims. During the parties' meet and confer video conference, Plaintiff threatened

1   that unless Defendant agrees to purchase her works, she intends to (i) continue

2   litigating her claims, (ii) gather other writers together to file a similar lawsuit

3   against Defendant and (iii) speak with the media about Defendant purportedly

4   stealing ideas from a Black female writer." This is also an intentionally false and

5   misleading claim and the Defendant is conflating and misrepresenting

6   conversations.

7          During the Zoom conference the Plaintiff never threatened any retaliation if

8   the Defendant didn't purchase her work. That is a flat-out false statement. The

9   Plaintiff gave her reasons for why she declined their initial offer to forfeit her

10  rights to appeal in exchange for the Defendant not pursuing attorney's fees against

11  her, and that if they couldn't find an amicable compromise then she would exercise

12  her legal right to appeal, since they declined her counteroffer which was the

13  compromise of the Defendant buying her screenplay in exchange for forfeiting her

14  rights to appeal.

15         The Defendant declined the Plaintiff's counteroffer and declined to continue

16  the conversation around finding a compromise on June 10th, 2021, per **Exhibit H.**

17  During the Zoom conference call on June 11th, 2021, the subject of the Defendant

18  purchasing her script wasn't a viable option since the Defendant had already

19  declined the counteroffer.

20         Additionally, on June 7th, 2021, the impartial representative from California

21  Lawyers of the Arts provided incentives to the Defendant to agree to

22  mediate/meet-and-confer with the Plaintiff **after the Defendant declined** the

23  initial request to mediate. Those incentives were (1) that the Plaintiff has the right

24  to appeal, (2) the right to speak to the media about her experience, and (3) that

25  there could be grounds for a Class Action Lawsuit by other writers given the

26  inflammatory press release that ViacomCBS directly released to the public

27  themselves, and that the Plaintiff was seeking a mediation session as to not have

28  this particular lawsuit escalate, per **Exhibit D.**

1    The Defendant's claims that it was first brought up during the Zoom

2 conference on June 11th, 2021, as a threat is proven false, per **Exhibit D.** The three

3 incentives were brought up as reasons to mediate and were not used as threats

4 during the Zoom conference call. The Defendant is clearly and purposely omitting

5 information regarding the Plaintiff's efforts to mediate the situation and is

6 providing misleading claims, in a direct and deliberate effort to mislead the Court.

7    Moreover, these reasons were given as an incentive to mediate the situation.

8 The Plaintiff only countered with the offer for the Plaintiff to purchase her script

9 **after** the Defendant **first threatened** to recoup nearly $240,000 worth of legal fees

10 if she did not forfeit her legal rights to appeal, per **Exhibits B, E, and H.** This

11 proves that the Defendant is intentionally providing false, inaccurate, and

12 defamatory claims against the Plaintiff and is conflating and misrepresenting

13 conversations.

14    Again, on June 10th, 2021, the impartial representative countered the

15 Defendant's initial offer to forfeit moving forward with their motion to recoup legal

16 fees if the Plaintiff forfeited her legal rights to appeal. The Plaintiff declined this

17 offer and the impartial representative provided the counteroffer of if the Defendant

18 buys her *#Squadgoals* screenplay and doesn't pursue legal fees, then the Plaintiff

19 would forfeit her legal rights to appeal.

20    This compromise would have protected both parties. If the Defendant legally

21 owned the Plaintiff's screenplay, then the Plaintiff would have no grounds for an

22 appeal, would not be able to go to the media and/or press with her story, and she

23 wouldn't be able to participate in any Class Action Lawsuits.

24    Since the Plaintiff in good faith believes in the merits of her case, this would

25 satisfy her need for a sense of justice since when the Defendant derived their *Bull*

26 episode from her screenplay and treatment, it rendered her work worthless within

27 the entertainment industry.

28    On June 10th 2021, the Defendant declined the counteroffer and also

1    declined to provide a counteroffer that would end this litigation. It was the

2    Defendant who initiated the conversation around settlements and offers, not the

3    Plaintiff.

4          As previously stated, it was the Defendant's legal counsel, Ms. Hill, who

5    started the conversation about a payout, when she asked, "So you want a payout?"

6    during the Zoom conference call. The Plaintiff made it extremely clear that she did

7    not want to continue to escalate this lawsuit, but that she would appeal if an

8    amicable compromise couldn't be reached, which is a normal response and is

9    within her legal rights.

10         Additionally, it is defamatory and a clear and intentional misrepresentation

11   of the Plaintiff's character to allege that she by any means is acting in bad faith or

12   misconduct. Lawsuits usually end in monetary settlements, it's not malicious nor is

13   it in bad faith for the Plaintiff to expect the same or to exercise her full legal rights

14   regarding a legal case in which she fully believes in its merits and which has been

15   substantiated by other legal professionals.

16          The Defendant claims, "Plaintiff's conduct in connection with this fee

17   motion is further evidence of her bad faith conduct. On June 8, 2021, counsel for

18   Defendant contacted Plaintiff requesting a brief phone call to discuss the substance

19   of this fee motion in accordance with Local Rule 7-3. Plaintiff claimed that she did

20   not want to participate in the call without her "new" legal representative present,

21   but as of the filing of this fee motion, Plaintiff is still proceeding pro se," this is

22   also false as proven by **Exhibits C and H**.

23          On June 8th, 2021, the Plaintiff said that she would need to confer with her

24   new legal representation as she would want them on the call and that once that was

25   confirmed she would provide available dates and times, per **Exhibit C**. This was

26   not in bad faith as the Plaintiff was enrolled in the California Lawyers of the Arts

27   program and was actively seeking new legal representation, per **Exhibit H.** The

28   Defendant agreed to the Plaintiff's request, per **Exhibit C.**

1    This issue was addressed previously, but it should also be noted that the
2    Plaintiff clearly communicated to the Defendant that she was working closely with
3    the California Lawyers of the Arts to secure a new lawyer, the program takes time
4    to match clients with legal representation, but the Plaintiff was transparent about
5    this, per **Exhibit C.** Also, the Plaintiff was being truthful regarding being in the
6    process of securing new legal representation, per **Exhibits G and I.**
7        The Defendant claims that, "Plaintiff's conduct makes clear that she
8    intentionally delayed the meeting with Defendant's counsel in order to undercut
9    Defendant's motion to recover fees," this is also a false claim, since as proven by
10   Exhibit D. It was the Plaintiff who initated the request for mediation/meet-and-
11   confer on June 7th, 2021, and it was the Defendant who declined to meet multiple
12   times.
13       The sole reason for the Defendant's newfound urgency to meet-and-confer,
14   which was less than 24 hours from the Local Rule 7-3 deadline, was because they
15   were deliberating using the threat of suing the Plaintiff for an inflated and
16   unreasonable amount of attorney's fees as an intimidation tactic to coerce the
17   Plaintiff into waiving her legal rights to appeal. If this were not the Defendant's
18   sole motivation, then they would have initially accepted the Plaintiff's request for
19   mediation/meet-and-confer that was initially offered to them on June 7th, 2021, per
20   **Exhibit D**.
21       It has been documented that the Plaintiff initiated the request for mediation
22   with the Defendant who declined multiple times, per **Exhibits B, D, C, and H.**
23   Therefore, what is clear is that it is the Defendant is the party which is acting in
24   bad faith, and not the Plaintiff.
25       What is clear and proven through the provided Exhibits, is that within the
26   Defendant's Motion to recover attorneys' fees that they intentionally provided false,
27   inaccurate, and misleading claims against the Plaintiff and failed to prove that they
28   are seeking a reasonable amount of attorneys' fees, but rather, that they are clearly

16

1  inflating the amount as an intimidation tactic to get the Plaintiff to forfeit her legal

2  rights.

3

4  **D. Ninth Circuit Precedents Preclude a Fee Award Against a Plaintiff Unless**

5  **the Lawsuit Was Frivolous.**

6        While not directly applicable to Federal Rule of Civil Procedure 54(d) and

7  17 U.S.C. Section 505, other cases provide further guidance on when attorney's

8  fees may be awarded against a plaintiff. Under *Marbled Murrelet v. Babbitt,* 182

9  F.3d 1091, 1095 (9th Cir. 1999), a court may not award attorneys' fees to a

10 defendant unless the case brought was "frivolous." Marbled Murrelet followed

11 *Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n*, 434 U.S.

12 412 (1978) ("Christiansburg"), which held that "although a prevailing plaintiff in a

13 Title VII proceeding is ordinarily to be awarded attorney's fees by the district court

14 in all but special circumstances, a prevailing defendant is to be awarded such fees

15 only when the court in the exercise of its discretion has found that the plaintiff's

16 action was frivolous, unreasonable, or without foundation." Christiansburg further

17 stated that "a plaintiff should not be assessed his opponent's attorney's fees unless

18 a court finds that his claim was frivolous, unreasonable, or groundless, or that the

19 plaintiff continued to litigate after it clearly became so." Id. at 422. In *Hughes v.*

20 *Rowe*, 449 U.S. 5, 14 (1980), the Supreme Court followed Christiansburg in

21 holding that a defendant may not recovery attorney's fees unless the plaintiff's

22 action is "meritless in the sense that it is groundless or without foundation. The fact

23 that a plaintiff may ultimately lose his case is not in itself a sufficient justification

24 for the assessment of fees." Under Marbled Murrelet and Christiansburg, the

25 inquiry is whether Plaintiffs' lawsuit was "frivolous, unreasonable, or groundless,

26 or that the plaintiff continued to litigate after it clearly became so." Christiansburg,

27 434 U.S. at 422. A case is frivolous when the "result is obvious" or a party's

28 argument are "wholly without merit." *National Mass Media Telecomm. Sys. v.*

1   *Stanley* (In re National Mass Media Telecomm. Sys.), 152 F.3d 1178, 1181 (9th
2   Cir. 1998).
3          Here, the Defendant has provided no evidence that Plaintiffs' lawsuit was
4   frivolous and/or meritless. In fact, the Court allowed for the original complaint to
5   be amended rather than dismissing it with prejudice which speaks to the merits of
6   the case. If the Plaintiff had been able to have her legal due process and wasn't
7   hindered by her previous attorney, then the amended complaint would have been
8   presented by a competent lawyer, and reasonably, the outcome of the case may
9   have been different. Therefore, the Plaintiffs' claims in this litigation, if not
10  ultimately successful, were substantially justified.
11         In fact, on June 11th, 2021, the Plaintiff conferred with Gerald M. Serlin,
12  Certified Appellate Law Specialist, State Bar of Calif., Bd. of Legal Specialization,
13  BENEDON & SERLIN, LLP, to review the merits of her infringement case and to
14  seek guidance on the merits of appealing her case, per **Exhibit J.**
15         Mr. Serlin reviewed the Plaintiff's amended complaint, the Defendant's
16  responses, and the Court's summary granting the motion to dismiss. After
17  reviewing all of the materials of the case, it was Mr. Serlin's position that the
18  Plaintiff's case had merit and was valid, and that if the Plaintiff had legal due
19  process with a competent lawyer, then the outcome of the dismissal may have been
20  different. In fact, Mr. Serlin referred the Plaintiff to potential lawyers who were
21  within her financial budget based on his belief in the merits of this case.
22         This proves that in good faith, based on the merits of her case, and under the
23  legal guidance of a competent appellant lawyer, the Plaintiff's initial choice to
24  pursue this claim was justified and not frivolous.
25         To further substantiate this point, under *Penguin Random House LLC, et al.*
26  *v. Frederik Colting and Melissa Medina*, d/b/a Moppet Books No. 17-cv-386
27  (S.D.N.Y. Sept. 8, 2017), "a case involving a series of children's books that
28  "contain a condensed, simplified version of the plot[s]" of classic American novels

1    — Judge Rakoff of the U.S. District Court for the Southern District of New York
2    ruled in favor of the authors and book publishers, holding that the series of
3    children's books "infringe[d] upon plaintiffs' exclusive right to reproduce their
4    novels ... and [their] exclusive right to exploit the market for derivative works
5    based on their novels," based on this precedent, it's a reasonable assertion that a
6    similar outcome would be in favor of the Plaintiff upon a successful appeal, as it
7    alleged that the Defendant used a condensed, simplified version of the Plaintiff's
8    *#Squadgoals* screenplay and treatment to derive the *Bull* episode, and if the
9    Plaintiff's legal due process hadn't been hindered by her previous legal counsel, it's
10   reasonable to assert that the amended complaint would have survived the motion to
11   dismiss.

12        Additionally, based on the public revelation made by the Defendant
13   regarding their own internal investigation into *Bull* per **Exhibit A**, it is clear that
14   during discovery, a direct nexus of access would have been discovered, which
15   would further substantiate and prove the substantial amount of circumstantial
16   evidence that already exists.

17        And therefore, the Plaintiff's decision to continue to pursue this infringement
18   case since the Defendant has refused to find an amicable compromise that would
19   resolve and end the litigation of this case, was justified and not frivolous.

20

21   **E. The Defendant Unethically and Illegally Provided False Exhibits In Their**
22   **Motion via the Defendant's Exhibit 3**

23

24        Per California's Penal Code 134 PC, which states that it's a crime for a
25   person to prepare false evidence with the intent to use it fraudulently in a legal
26   proceeding, the Defendant unethically and illegally, provided misleading and
27   doctored evidence as their Exhibit 3 with the intent to deceive the Court in their
28   Motion for attorney's fees.

1    In Ms. Hill's declaration of support, she states, "On June 11, 2021, Plaintiff
2    finally agreed to meet to discuss Defendant's motion for fees. That afternoon,
3    Plaintiff and Defendant's counsel participated in a Zoom virtual conference where
4    they further discussed the basis of this Fee Motion. [...] A true and correct copy of
5    the June 8-11 email exchange is attached hereto."

6    In alignment with the Defendant providing false, inaccurate, and misleading
7    claims and misinformation in their Motion, with the intent to deceive the Court, the
8    Defendant provided an edited and incomplete email exchange as their **Exhibit 3**.

9    In the Defendant's Motion **Exhibit 3**, the Defendant purposely provides the
10   email exchange between the Plaintiff and the Defendant out of chronological order.
11   In **Exhibit 3**, the email chain starts from June 11th, 2021 and goes back to June 8th,
12   2021. The Defendant intentionally provided the email exchange out of
13   chronological order in effort to mislead the Court as to the true and accurate
14   timeline of events.

15   However, what is even more damaging, is that Ms. Hill claimed in her
16   declaration that, "A true and correct copy of the June 8-11 email exchange is
17   attached hereto." This is a provably false claim.

18   The Defendant **deleted pertinent emails** from the email exchange that took
19   place between June 8th, 2021, and June 11th, 2021 between the Defendant and the
20   Plaintiff, and therefore, provided a doctored copy of the email exchange, as Ms.
21   Hill did not disclose that she deleted emails from the email exchange and falsely
22   claimed that it was a true and correct copy. **This intentional deleting of emails**
23   **further proves that the Defendant has been providing purposely false,**
24   **misleading, and inaccurate information in their Motion and in effort to**
25   **deceive the Court.**

26   For comparison and review, the Plaintiff has provided **Exhibit C**, which is
27   the true, correct, and complete email exchange between the Plaintiff and the
28   Defendant from June 8th, 2021 – June 11th, 2021, in chronological order.

The Defendant **deleted at least four emails in the exchange** that they provided in their **Exhibit 3.** Within those purposely deleted emails, the Plaintiff again requested for an impartial representative from the California Lawyers of the Arts to be present, since the Plaintiff was self-represented. Again, the Defendant denied the Plaintiff's request.

The Plaintiff also stated that, "Understood, however, the deadline has passed for the pre-filling conference pursuant to the Local Rules. I'm open to discussing it during today's meeting, but it should not be taken as an approval for an extension for the deadline," per **Exhibit C**.

It is clear that the Defendant intentionally deleted those emails in order to (1) falsely claim that they made their meet-and-confer deadline pursuant to Local Rule 7-3, (2) to cover up the fact that the Defendant was purposely trying to intimidate the Plaintiff by declining to have an impartial representative present to during the meet-and-confer, (3) to cover up that they were purposely providing misleading, inaccurate, and defamatory information to the Court, and (4) to cover up that it was the Plaintiff who wished to end the litigation with an amicable resolution in effort to further malign the Plaintiff's character.

The deleted emails also prove the Plaintiff had made multiple attempts to deescalate and resolve the case and did not desire to continue litigation if an amicable compromise could be found.

Again, the **Plaintiff requests that the Court closely reviews the Defendant's Exhibit 3 against the Plaintiff's Exhibit C,** to confirm that the Defendant intentionally provided the email exchange out of chronological order and deleted pertinent emails within the email exchange, as a document **cannot** be "true and correct" if emails have been deleted and is purposely presented out of chronological order in effort to obscure the true timeline of events to intentionally deceive the Court.

Since there is documented evidence that the Defendant provided edited and

1  doctored evidence within their **Exhibit 3**, it inherently calls into question the
2  veracity and accuracy of all of the Defendant's submitted Exhibits and claims
3  within their Motion and further proves that the Defendant is capable of falsifying
4  evidence, and therefore, could be inflating their attorney's fees to an unreasonable
5  amount as a means to intimidate and coerce the Plaintiff into forfeiting her legal
6  rights to appeal and in effort to deceive the Court.

8  **III. CONCLUSION**

10  For all the reasons explained above, the Court must deny the Defendant's motion
11  for attorney's fees.

13  Respectfully submitted this 21st day of June, 2021.

/s/

Candesha Washington
Pro Se

C. WASHINGTON
9403 SANTA MONICA BLVD.
SUITE 582
BEVERLY HILLS, CA 90010



CERTIFIED MAIL
7020 1290 0000 8105 5660

Ms. YOLANDA SKIPPER
COURTROOM DEPUTY TO
HON. CONSUELO B. MARSHALL, JUDGE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
350 WEST 1ST STREET
SUITE 4311  ROOM 4176
LOS ANGELES, CA 90012-4565

FIRST CLASS





U.S. POSTAGE PAID
FCM LG ENV
T-COLD LAKE CA
91602
JUN 21
AMOUN T
$6.80
R2305H1291132-28